# Bright's Contested Election.

*Election law — Review — Purging the ballot box — Findings of facts.*

1. In an election contest, the appellate court will examine the proof to see whether there is evidence to warrant the findings of the trial court and to sustain the action complained of.

2. Where it appears, in an election contest, that there was a conspiracy among the election officers to conduct a corrupt election, that a large number of illegal votes were cast, and that the illegal votes could not be identified in the box, the entire poll will be rejected.

*Courts—Court in banc—Election law—Appeals.*

3. Where two out of three judges signed a decree in an election contest, and it appears that the third judge had not complied with a request of his associates to meet them in conference, and that the term of one of the judges, signing the decree had expired after

an appeal was taken, the appellate court will not consider an objection that all of the judges had not sat in banc in making a final disposition of the case.

Argued January 25, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeals, Nos. 137 and 138, Jan. T., 1928, by Emma Bright and Fred Fabretti, from decrees of Q. S. Lackawanna Co., Nov. T., 1925, Nos. 376 and 377, in election contests, In re Election of Emma Bright, and In re Election of Fred Fabretti.   Affirmed.

Election contests.   Before MAXEY and WATSON, JJ. The opinion of the Supreme Court states the facts.

Decrees for petitioners in contests.   Emma Bright and Fred Fabretti appealed.

*Errors assigned,* inter alia, were decrees, quoting record.

*David J. Reedy* and *David J. Davis,* with them *Stanley F. Coar,* for appellants.—It was the duty of the court to purge the list: Election Cases, 65 Pa. 20; West Mahanoy Twp. Election, 258 Pa. 176; Ayre's Contested Election, 287 Pa. 135; Flynn's Election, 5 Pa. Dist. R. 168; Locust Ward Election, 3 Clark 11; Read v. Kneass, 2 Parsons 584; Mann v. Cassidy, 1 Brewster 11; Melvin's Case, 68 Pa. 333; Knight v. Coudersport Boro., 246 Pa. 284; Foy's Election, 228 Pa. 14; McDaniel's Case, 2 Pa. L. J. 319; School Directors Contested Election, 12 Phila. 572; Conway v. Carpenter, 15 Phila. 388; Daly v. Petroff, 10 Phila. 389.

It is necessary to know what is meant by the words "court," "judge" and "tribunal," the Supreme Court has not only made the distinctions very clear but has also directed attention to the necessity of keeping them in mind: McCormick's Election, 281 Pa. 281; Myers v.

Coal Co., 212 Pa. 193, 200; Zerbey v. Allen, 215 Pa. 383; Ebling v. Boro., 244 Pa. 505; Thomas v. Herring, 244 Pa. 550; Carter's Est., 254 Pa. 518, 527; Kicinko v. Petruska, 259 Pa. 1, 7, 8; Summers v. Kramer, 271 Pa. 189; Gail v. Phila., 273 Pa. 275.

*James J. Powell* and *Francis Shunk Brown,* with them *James P. Wilson* and *Clarence Ballentine,* for appellees.—The findings of fact and conclusions of law that the election was undue and illegal, as recommended by the examiner and found by the court, is seen to be amply sustained by the great weight and preponderance of the evidence.

It was not possible to purge the poll: Wheelock's Election, 82 Pa. 297; Renshaw v. Conahan, 17 Pa. Dist. R. 705.

OPINION BY MR. JUSTICE SCHAFFER, March 12, 1928:

These are election contests for the offices of burgess and tax collector in the Borough of Throop, Lackawanna County. Fred C. Fabretti was returned as elected to the former office and Emma Bright to the latter. The court below determined that neither of them was legally chosen and awarded a certificate of election as burgess to Peter Sioch and as tax collector to James J. McNulty. From this action Fred C. Fabretti and Emma Bright appeal.

The record is a voluminous one, covering more than 1,250 pages. We are satisfied after a review of it that the correct conclusion was reached by the judges who determined the proceedings and believe that no good purpose would be served by detailing even the salient features in the mass of testimony which is analyzed in an opinion by Judge MAXEY of the court below covering more than one hundred pages of the record. We shall content ourselves by briefly summarizing some outstanding features of the cases and by stating appellants' contentions and our conclusions.

The whole controversy hinges on whether it was proper to throw out the entire vote of the second ward which the court did. Appellants argue that this should not have been done, that instead the poll should have been purged of the illegal ballots. There was but one polling place in the ward and in it 1,143 votes were cast. The testimony satisfyingly discloses that the election officers entered into a conspiracy before the voting began to conduct a corrupt election. The court found as a fact that there was an unlawful combination between members of the election board and Fabretti and Emma Bright to deprive Sioch and McNulty of an honest election and honest count of the votes cast.

The glaringness of the illegalities as disclosed by the testimony and as found by the court below can be summed up as follows: More than 140 persons voted on fraudulent tax receipts which were furnished by Emma Bright, who was the tax collector in office and a candidate for reëlection, or by others in her behalf. The night before the election several hundred tax receipts were written out in her home; her name purports to be signed to them. She did not take the witness stand and no explanation was offered about these illegal tax receipts on which at least seven score persons voted; 296 nonregistered voters were allowed to vote without complying with section 10 of the Act of May 6, 1899, P. L. 254, providing how nonregistered voters may become eligible to vote. As many as 250 persons had assistance in marking their ballots without having declared their disability as provided by the Act of June 10, 1893, P. L. 419, section 26; Fabretti himself marked 137 of these ballots. The court below finds that voters were brought into the election room in groups and voted indiscriminately without regard to their qualifications or their names or addresses. The two lists of voters required to be kept by the election officers were kept improperly. The list of voters kept by one clerk does not correspond with that kept by the other either in number of voters

or names and in some instances the names cannot be deciphered; they both contain upwards of 300 names not on the registry list. As these names were added to the list, addresses and occupations were omitted, thus making identification impossible; many of these unregistered voters were not residents of the district. The examiner who heard the testimony reported to the court that it was impossible for him or for any other person who should examine the lists of voters prepared by the election officers to determine the names of many of them and the court finds that to keep a list of voters as did these election officers is equivalent to keeping no list at all. No return was made of unused ballots and no stubs of ballots were found in the ballot box. Intoxicating liquors were furnished in the interest of Fabretti and Emma Bright to voters in a room in the building where the voting took place. Money was apparently corruptly used to influence voters in their behalf. Fabretti, who had been chief of police of the borough, was present in the election room, as was another armed officer for a large part of the day for the evident purpose of intimidating voters. Fabretti took possession of the ballot box after the polls closed.

The court below recognized that if it was possible to purge the ballot box of the illegal votes therein this should be done, but found that the "illegal votes cannot be identified in the box." Our examination of the record convinces us that there is no way of accurately identifying the ballots of the 296 illegal nonregistered voters, of the 140 or more who voted on fraudulent tax receipts or of the 250 who received illegal assistance. It is true, as appellants say, we laid down the rule in Ayre's Contested Election, 287 Pa. 135, that "To warrant throwing out the vote of an entire election district, the disregard of the law must be so fundamental as to render it impossible to separate the lawful from the unlawful votes." Of course this means to accurately separate them; that we are convinced could not be done in these proceedings.

If the attempt were made there would be no certainty that the result reached would express the honest intent of the qualified voters. "When the acts of the officers are so fraudulent and irregular that the result cannot be ascertained, then the entire poll is rejected": Contested Election of Edwin R. Wheelock, 82 Pa. 297, 299. Appellants do not, and can not, deny the right of the court to throw out the entire poll of a district upon a proper showing; indeed, upon their motion, the court rejected the entire vote in another of the wards. In the wholesaleness of its illegalities, the election we are now reviewing resembles West Mahanoy Township's Contested Election, 258 Pa. 176, and there the entire poll was thrown out.

In such proceedings as these we examine the proofs to see whether there is any evidence to warrant the findings of the trial court and to sustain the action complained of: Hand's Case, 266 Pa. 277; Plains Township Election Returns, 280 Pa. 520; Ellwood City Borough's Contested Election, 286 Pa. 257. We find ample warrant in the testimony for the court's conclusions and its judgment.

One other matter remains for consideration. Complaint is made that all of the judges of the court below did not sit in banc in making final disposition of the cases. We do not intend in any way to abate the requirement laid down in McCormick's Election, 281 Pa. 281, that "Where a court is acting as a whole, or in banc, all the judges constituting the tribunal, or as many of them as may be available at the time ought to sit together" but the situation here is such that we feel nothing would be accomplished by sending the cases back so that this requirement may be met. Judge NEWCOMB, the president judge, had participated in the hearing on exceptions which were heard by the court in banc. The proceedings had been pending for almost two years. Judge WATSON'S term of office was about expiring. He and Judge MAXEY requested Judge NEWCOMB to meet

with them in conference to dispose of the cases. He did not comply with their request and they then proceeded to decide the controversies. We are not interested in the personal animus between the members of the bench of Lackawanna County, but we are certain that in the performance of their judicial duties they will agree that personal feeling between them should play no part. If we sent the cases back now, Judge WATSON could take no part in their consideration, as he no longer holds judicial office, so that the court as constituted when they were decided could not be reconvened; for this reason we will not do so.

Being of opinion that the proceedings were properly determined in the court below, its order is affirmed at appellants' cost.