## Dunmore Borough Election.

Argued February 4, 1930.   Before Moschzisker, C. J., Frazer, Walling, Sadler and Schaffer, JJ.

*Clarence Balentine,* with him *J. Harry Morosini, J. Julius Levy* and *John Memolo,* for appellant.—The Court of Common Pleas of Lackawanna County was without jurisdiction to order a recount of the votes cast for burgess of Dunmore, for the reason that the returns of the election board of the votes cast for that office were not before the court, but were filed, as the law required, with the clerk of the Court of Quarter Sessions of Lackawanna County: Computation of Election Returns, 20 Lackawanna Jurist 318; Russ v. Com., 210 Pa. 544; Denn v. Reid, 10 Pet. 524; Seidenbender v. Charles, 4 S. & R. 151.

There is internal evidence that the Act of 1927 was not intended to repeal the Act of February 13, 1874: 26th Ward Election, 26 Pa. Dist. R. 1081; Com. ex rel. v. Bobby, 11 Pa. D. & C. 350.

Notwithstanding the lack of jurisdiction to enter the order from which this appeal is taken, and notwithstanding that the statute in question does not allow an appeal, it is believed the merits of the order are before the court under Smith's Petition, 292 Pa. 140.

*A. Carson Simpson,* with him *John J. Toohey, George W. Ellis, David J. Reedy* and *Francis Shunk Brown,* for appellee.—The court of common pleas had jurisdiction to order the recount.

Return for borough offices must be filed with the prothonotary of the court of common pleas.

The Act of February 13, 1874, is unconstitutional: Com. v. Cooper, 277 Pa. 554; Wilson v. Downing, 4 Pa. Superior Ct. 487; Barret's App., 116 Pa. 486.

Election returns for borough offices must to-day be filed with the prothonotary of the court of common pleas, even if the Act of February 13, 1874, should be held constitutional: Forkston Twp. Election, 12 Pa. Dist. R. 348; Com. v. Keefe, 15 Pa. Dist. R. 407; In re Computation of Vote, 16 Pa. Dist. R. 245.

The actual effect of the Act of 1899, therefore, is to amend the Act of January 30, 1874, and to repeal by implication the later statute of that year: Fort Pitt B. & L. Assn. v. B. & L. Assn., 159 Pa. 308; York Water Co. v. York, 250 Pa. 115; Murdoch v. Biery, 269 Pa. 577; Com. v. Curry, 285 Pa. 289.

All the considerations applicable to the Act of 1899 apply, cumulatively, to the Act of 1909: Com. v. Muir, 1 Pa. Superior Ct. 578; Gallagher v. MacLean, 193 Pa. 583; Davis v. Moore, 50 Pa. Superior Ct. 494.

The court of common pleas had jurisdiction to order the recount: Kesslersville Dist. Ballot Box, 9 D. & C. 698; Plain Twp. Election Returns, 280 Pa. 520; First Congressional Dist. Election, 295 Pa. 1; Nolan v. Jones, 67 Pa. Superior Ct. 430; Election Cases, 65 Pa. 20.

There is no evidence of tampering with the ballot box: Kelly v. Creen, 53 Pa. 302; Murphy v. Chase, 103 Pa. 260; Snyder v. McGill, 265 Pa. 122, 127; Smith's Petition, 292 Pa. 140; Carbondale's Election, 280 Pa. 159.

OPINION BY MR. JUSTICE SCHAFFER, March 17, 1930:

This is an appeal in an election recount proceeding conducted by the court below under the provisions of the Act of April 23, 1927, P. L. 360, involving the vote cast for the office of burgess in the First Ward, Second District, of the Borough of Dunmore. The count of the vote as made by the election officers brought about the

election of Frank M. Clemens as burgess; as made by the recount board named by the court, Wesley J. Webber received a majority of the votes cast for the office.

A petition was presented to set aside the return of the recount board and to substitute therefor the return as made by the election board, and a rule to show cause was granted, which after hearing was discharged; from this action of the court Frank M. Clemens appeals, raising two questions: (1) Did the court of common pleas have jurisdiction to order a recount of the vote? (2) Does not the evidence establish that the ballot box and its contents were tampered with between the time when it left the custody of the election board and the time when it was brought into court for the purpose of making the recount?

On the question of jurisdiction, it is the contention of appellant that a recount of votes cast for the office of burgess cannot be made by the court of common pleas under the Act of 1927 for the reason that the returns of the election for that office were not before the court of common pleas as the Act of February 13, 1874, P. L. 44, requires the returns of election of township and borough officers to be made to the clerk of the court of quarter sessions. We are of opinion that the provisions of this 1874 Act, if it was constitutionally passed, are no longer controlling. The act was an amendment to the Act of January 30, 1874, P. L. 31, which provided (section 13) that the returns should be filed in the office of the prothonotary of the court of common pleas. The amending act does not comply with the literal provisions of article III, section 6 of the Constitution, which reads, "No law shall be......amended......by reference to its title only, but so much thereof as is...... amended......shall be reënacted and published at length." All that the Act of February 13th does is to alter and amend the preceding statute so "as to require the returns of the election of township and borough officers to be directed to the clerk of the court of quarter

sessions......instead of to the prothonotary of the court of common pleas"; it does not reënact and publish "so much thereof as is amended" at length. See Com. v. Cooper, 277 Pa. 554; Wilson v. Downing, 4 Pa. Superior Ct. 487.

But, however, this question of the constitutionality of the statute may be, the Act of April 28, 1899, P. L. 127, expressly provides that the returns shall be filed with the prothonotary of the common pleas. While it makes no reference to the earlier Act of February 13, 1874, and does not seek to amend it, it substitutes a requirement entirely inconsistent with its terms and supplants it and therefore works a repeal by implication. "A subsequent statute, revising the whole subject-matter of the former, and evidently intended as a substitute for it, although it contains no express words to that effect, must, in accordance with principles of law, as in reason and common sense, operate to repeal the former": Fort Pitt B. & L. Assn. v. Model Plan B. & L. Assn., 159 Pa. 308, 310; Com. v. Taylor, 159 Pa. 451; York Water Co. v. York, 250 Pa. 115; Murdock v. Biery, 269 Pa. 577; Com. v. Curry, 285 Pa. 289. The Act of May 6, 1909, P. L. 425, likewise amended the Act of January 30, 1874, without mention of that of February 13th, and the Act of May 19, 1923, P. L. 267, also amended it, reciting it as last amended by the Act of May 6, 1909, and the same thing occurs in the Act of April 1, 1925, P. L. 103, which refers to the Act of January 30, 1874, as amended by the Act of May 19, 1923. We, therefore, have four legislative declarations since the passage of the Act of February 13, 1874, that the returns are to be filed with the prothonotary of the common pleas. We conclude that returns of election for township and borough officers are properly made to that official.

Irrespective of the place of filing the returns, the court of common pleas had jurisdiction to order a recount of the ballots under the Act of April 23, 1927, P. L. 360. It is entitled, "An act providing for the opening of

ballot boxes after general, municipal, special, or primary elections, upon petition to the court of common pleas, or a judge thereof," etc. This necessarily includes all ballot boxes used at all elections and for all offices. The first section in comprehensive language directs that the court of common pleas or a judge thereof "shall open the ballot box......used at any general, municipal, special, or primary election......and cause the entire vote to be correctly counted, by persons designated by such court or judge." This also necessarily means any ballot box at any election. It is not an amendment of the acts discussed above, which give power to the judges who sit to compute and certify election returns to correct irregularities in certain instances, but creates an additional and independent remedy enforceable by any court of common pleas or judge thereof of the county in which the question may arise. See First Congressional District Election, 295 Pa. 1, 10. The Act of 1927 is a highly remedial statute and should be liberally construed: Wright v. Barber, 270 Pa. 186.

Appellant argues that the act applies only to national, state, county and city officers. No such distinction is made in the statute itself. Furthermore, we have heretofore construed it as applicable to township offices. In Armstrong's App., 293 Pa. 1, the election of a township school director was involved, and in Plains Twp. Election Returns, 280 Pa. 520, a proceeding under the Act of January 30, 1874, P. L. 31, and its amendments, cognate to that of 1927, likewise the office of township school director was in controversy. Our conclusion is that the court had jurisdiction to make the recount and to correct the returns.

We now come to the second question raised: Was the ballot box tampered with between the time when it left the control and custody of the election board and the time when it was brought into court for the purpose of making the recount? A majority of the court below held that it was not. The third member of the court

dissented from this conclusion and was of opinion that it was. That question was not for him, however, as he was a candidate at the election. While the Act of 1927, under which the present proceedings are brought, does not contain the provision of the Act of January 30, 1874, P. L. 31 (repeated in the amending Acts of April 28, 1899, P. L. 127; May 6, 1909, P. L. 425; May 19, 1923, P. L. 267, and April 1, 1925, P. L. 103), disqualifying a judge who is a candidate from sitting with the court or acting in counting the returns of that election, yet his interest in the outcome of the election was in itself a bar to his sitting with the court on the recount. See principle stated in 33 C. J. 997. The judge in question certified that he sat for the very purpose of raising this question and having it decided on appeal; but, after reading and considering the dissenting opinion, we feel that the established rules require us to accept the facts as found by the majority of the court.

Before the election board had begun its count, in obedience to an order of court, its members appeared in court with the ballot box and other election paraphernalia and by the court's direction there proceeded to count the ballots and make a return. Their work was not completed until sometime the next day. The box was then sealed and delivered at the city hall, where there were custodians of all ballot boxes there delivered appointed by the court. Subsequently petitions were presented to the court for the opening of certain of the boxes, including the one here involved, and the court appointed three disinterested members of the bar to make a recount. The recount showed a material change in the result, diminishing the vote of appellant, Clemens, and increasing that of appellee, Webber, sufficiently to give the latter the election. It is alleged that while the ballot box was in the city hall, its lid was broken open and the markings on the ballots changed in Webber's favor. Testimony was taken on this grave charge and the court as properly constituted decided that there had

been no tampering with the box or alteration of the ballots, that the recount correctly showed how the ballots were cast and that the count and return of the election board were wrong.

The ballot box and the ballots were produced before us. At that time there was an undoubted breach of the box which would have enabled a person to withdraw the ballots from it and change their markings. It was not, however, the condition of the box when brought before us, but its condition when produced to the court below for the recount, which is the determining factor in passing on the question of its integrity, and, as to this, the two judges, administering justice between the litigants, in their opinion spread upon the record, say, "The ballot box was brought into court and, in the presence of the court, one of the attorneys for the petitioners, pried up one end of a split board to demonstrate how entrance had been secured into the box. A nail which had held the other end thereupon dropped out of the board. ...... A deputy sheriff testified that when he brought the box into court it was loose at one side, so that the seal formed a paper hinge. Had such been the fact, the weight of the board would have torn the paper the first time the lid was thrown back. This testimony was contrary to the evidence before the court when the ballot box was brought before it;......and to evidence of other persons who saw the ballot box. ...... The recount board testified that the box when brought before them was sealed, the tape being through the handles, into the slot and the seal of the board, prop· erly signed, being on the slot. ...... The split board, the subject of all the controversy, was not apparent until time for replacing the ballots in the box, when a loud crash was heard, and counsel thereupon called attention to the fact, that at that time, the board had been loosened at one end. ...... The sole question before the court is whether the ballots counted by the recount board are the same ballots and in the same condition

that they were in when the election board finished. To believe that any change had been made, it would be necessary to believe......that the recount board had given false testimony, because, if their testimony is true, it would have been a physical impossibility to have opened the ballot box; and to disbelieve the further testimony of our own eyes when we saw that the paper seal, placed by the election board on the ballot box, was still in shape that no one could have gotten into the ballot box, particularly with a nail at one end still in place." In view of what has been quoted, particularly what is said about the court's own view of the box, we think it would not be a proper determination of the controversy to set up a contrary conclusion from our own inspection of the box, at a time quite long after that of the court below, when conditions from handling may have materially changed it, nor do we think that the testimony convincingly establishes that the judges who determined the case in the first instance were wrong in their judgment. "This statute [the Act of 1927] does not allow an appeal; therefore an appeal......is but a certiorari, and on such an appeal judicial review is restricted to the regularity of the record, though in this class of cases, in passing on the regularity of the record, findings of fact contained in the opinion of the court below may be considered so far as they concern fundamental questions": Smith's Petition, 292 Pa. 140, 142; Armstrong's App., supra, 6. As was said in Carbondale's Election, 280 Pa. 159, 167: "This is most peculiarly a case where the findings of the court below are entitled to the fullest credit......as they are based upon what came to the eyes of the judges by their inspection of the ballots and on credibility of witnesses."

The order of the court below is affirmed at appellant's cost.