Luzerne County Election Returns.

Argued August 19, 1930.   Before FRAZER, WALLING, SADLER and SCHAFFER, JJ.

*John Hampton Barnes,* with him *Wm. F. Berkowitz,
Mose H. Salsburg, Edward W. Wells* and *Abraham Salsburg,* for appellants, Oscar Birner,et al.—The courts had no authority to order perforation of ballots: Com. v. Mercer, 190 Pa. 134.

All the paper ballots issued and used by the voters were illegal and void and should not be counted: Election Count, 204 Pa. 92; McQuiston's Adoption, 238 Pa. 304; Bladen v. Phila., 60 Pa. 464; Stem v. Bethlehem, 231 Pa. 461; McLaughlin v. Boro., 224 Pa. 425; Dunmore Boro. Election, 299 Pa. 517.

*Wm. A. Schnader,* with him *J. Harold Flannery, Raymond A. Livingston, E. C. Marianelli* and *Herman J. Goldberg,* for appellee, Gifford Pinchot.—Ballots for primary elections are not to any extent or in any degree provided in accord with Act of June 10, 1893, P. L. 419, and its amendments.

The perforation of ballots to prevent counterfeiting is not prohibited by law: Independence Party Nomination, 208 Pa. 108; New Britain Boro. School Dist., 295 Pa. 478; Knight v. Boro., 246 Pa. 284; West Mahanoy Contested Election, 258 Pa. 176; Com. v. Kelly, 255 Pa. 475.

Except for one case (since overruled), in all of the cases setting aside the vote of an entire district, it was impossible for the voter to express his will, or fraud rendered it impossible to separate legal from illegal ballots. None arose upon certiorari.

PER CURIAM, August 20, 1930:

These appeals are based on alleged error in computation of the vote for governor at the primary held in Luzerne County on May 20, 1930. The first deals with the returns for the 2d District of the 8th Ward of the City of Wilkes-Barre. The court of common pleas was asked

to open the ballot box used therein and direct that an accurate computation of the votes cast be made. On examination, to use the words of the President Judge of the court below, "The evidence in this case reveals a most glaring instance of foul fraud and corruption." This wrongdoing the court found was so extensive as to make a correct tabulation impossible. It held that the apparent fraud could only be taken advantage of in a contest proceeding, and, as the petition was based on the Act of 1927 (April 23, P. L. 360), providing solely for a recount, directed the commissioners to certify the result reached by the election officers.

Perforations by number, previously ordered by the court, appeared on each ballot, and for this reason it was also asked that the entire vote from the district in question be rejected. It is clear under the law that the direction to make such markings was without legal justification, and that the court exceeded its power in requiring that the ballots be so altered; its right to guard against anticipated fraud is limited, by act of assembly, to the appointment of overseers to conduct the election when the necessity for such course is made apparent by petition of a party interested. The county commissioners alone have power to determine the wording or marks on the ballots.

On June 21st, the last day before our summer recess, we were asked to grant a supersedeas to stay further proceedings until the dispute which had arisen was passed on in this court. We refused to make such an order. No completed record was then presented which would enable us to determine the real legal question involved, nor was the decree, finally requiring a certification of the returns by the commissioners, made until some days thereafter. Indeed the appeal in the first case involving the single district was not perfected until June 24, 1930, when the writ of certiorari was filed in the court below, though the affidavit asking a review was sworn to on June 20th. The second case, herein-

after referred to, in which objection was made to the certification by the county commissioners, ordered by the court, was not appealed from until July 9, 1930. It is therefore evident, that the question in dispute was not before this court on June 21, 1930, when it made its cautionary order refusing a supersedēas, and we could not have passed on the contested legal question subsequently raised, and now presented for the first time. Following the usual procedure, the hearing was made returnable at our next scheduled meeting, which, under the rules, was September 29th. Neither party saw fit to ask that the case be heard at an earlier date because of any existing emergency though such procedure is expressly provided for and permitted by our rules. This court however of its own motion ordered its advancement and fixed for hearing of argument the first day when it was possible to secure the attendance of a quorum of the court. We have carefully considered the briefs, record and oral arguments.

It does not follow that, because of the receipt of fraudulent ballots, or the improper perforation thereof, the entire vote of the district must be rejected, where the request is solely to open the box and retabulate the contents as permitted by the Act of 1927. A proceeding based on this statute is confined to a recounting, and, in addition, the correction of errors in calculation apparent on the face of the returns to the extent indicated in our most recent case: Hazleton Mayoralty Election, 301 Pa. 14. If the reception of illegal votes is made evident, resulting in an admittedly dishonest return, the computation must nevertheless be accepted, and the parties injured relegated to contest proceedings. Here, the court found the fraud to be of such character as to make impossible the separation of the ballots validly deposited from those improperly cast, and for this reason could only accept the count returned by the election officers as verity.

So that the interests of no one may be jeopardized by the delay necessary for the preparation of a formal opinion, which will be later filed, we have thus briefly stated our conclusion.

What has been said applies to the second appeal before us complaining of the receipt of returns from all districts in Luzerne County where perforated ballots were used, the same having been made at the direction of the court without any legal authority. This does not justify our rejection of the entire vote, as already noted, but was a matter for contest proceedings.

The orders of the court in both cases are affirmed at the cost of appellant.

OPINION BY MR. JUSTICE FRAZER, Acting Chief Justice, September 29, 1930:

Both above appeals will be considered and disposed of in one opinion.

Supplemental to what was said in our Per Curiam opinion filed August 20, 1930, affirming the action of the court below, we deem advisable a somewhat more extended reference to the facts involved in these appeals than was recited in that opinion. The facts developed in the record indicate as follows: The appeals in question are from orders made by the Court of Common Pleas of Luzerne County following a recount of the vote for governor cast at a primary election held May 20, 1930. The first proceeding was based on a petition of three qualified electors of the 2d District of the 8th Ward of the City of Wilkes-Barre, filed before the completion of the computation of the returns by the county commissioners. It alleged in part, that ballots cast in each election district throughout the county, except a few precincts in which voting machines were used, were invalid and illegal because of unlawful marginal perforations thereon. Each ballot cast in the election district named showed a puncture of the number 3223 through its margin.

A petition was thereupon presented on behalf of Francis Shunk Brown, one of the candidates for governor, containing a general averment of fraud in the conduct of the election throughout the county, and further stating that owing to the use of illegal perforated ballots, the court should reject the entire vote of the county for the reason given. Though containing a general averment of fraud, the petition was plainly based upon the Act of April 23, 1927, P. L. 360. An order was made in the court below on June 4, 1930, directing a hearing as to the facts, and this was later had. In opinions subsequently filed by the court in banc, it was declared as a fact that all ballots in the district bore the same serial perforated number, which had been placed thereon by officers of the court under its direction. It also found, "the evidence in this case reveals the most glaring instance of foul fraud and corruption," and gives in detail many of the illegal acts made apparent by the testimony.

On June 13, 1930, an order was entered however refusing the prayer of petitioner, and directing the county commissioners to receive and compute the return of the election officers of the district in question as filed, inasmuch as the fraud was so extensive as to make impossible correction of the computations returned by the election officers. From this order an appeal was taken, but the writ necessary to make it effective was not filed in the court below until June 24th, though the affidavit asking a review was sworn to on June 20th, and this court was asked on June 21st, to grant a writ of supersedeas restraining the certification of the vote until the legal question involved had been determined. In the second case, hereinafter referred to, where objection was made to the certification by the county commissioners of the vote of the entire county as ordered by the court, and as permitted by the Act of May 25, 1921, P. L. 1125, was not made the subject of a writ of error until July 9, 1930. It is accordingly evident that the question in

dispute was not before this court on June 21, 1930, at the time of entering its cautionary order refusing a supersedeas, and we could not then have passed on the disputed legal question subsequently raised, and now presented for the first time. At the hearing on June 21, 1930, there was nothing before this court but the order dismissing the petition which, by section 5 of the Act of 1927, is made a final adjudication as to the correctness of the return, though not precluding the right to review the record on certiorari, or preventing the institution of contest proceedings. It was urged by the opposing candidate, Gifford Pinchot, that the appeal could not therefore be properly considered at that time, and consequently not subject to a supersedeas. Accepting this view, the prayer was refused and argument on the merits of the appeal fixed for the first meeting of the court, September 29th, following.

Several days thereafter a final order was entered in the court below directing the county commissioners to certify the vote to the secretary of the Commonwealth, subject to correction if such be legally required. Neither party applied for advancement of the case for hearing, as was their right under the rules of this court. The acting Chief Justice, however, in the absence of such request, of his own motion, directed a session of this court to be called for hearing the dispute on August 8, 1930, which date was later changed to August 19th, owing to inability to secure the presence of the necessary quorum of the court until that time. In the meantime, without opening all ballot boxes, a final order was entered below directing the county commissioners to certify the vote in the several districts as returned by the election officers without correction. Though stated in its first opinion that the ballots in each district had been perforated by order of the court, yet in its later declaration it declared, as appears by the record, there is no evidence of such marking except in the one instance first referred to. A

consideration of the legal questions raised in that case will dispose of the complaint made as to all.

The first question suggested is to the validity of the perforations ordered by the court, which it is averred was directed for the purpose of preventing fraud. "Official primary ballots for each party shall be prepared by the county commissioners. These ballots shall be printed on white paper of uniform quality and shall be uniform in size, style of printing and general appearance. On the back of each ballot shall be printed in prominent type the words, Official Primary Ballot of ——————— Party and facsimile signatures of the county commissioners of the county. The ballots shall vary in form only as the names of the district and the provisions of this act may require." Act of July 12, 1913, P. L. 719, section 5. And by the following paragraph of the same statute it is directed, "the county commissioners shall prepare and furnish to the election officers for use at the primaries [the] official ballots of each party." All primaries are to be conducted in conformity with the laws governing general elections, which makes applicable the Act of 1903, P. L. 419, section 27, which provides, "no ballot without the official endorsement shall, except as herein otherwise provided, be allowed to be deposited in the ballot box, and none but ballots certified in accordance with the provisions of this act shall be counted." See also Act of June 10, 1893, P. L. 419, section 13.

It is clear from examination of legislation dealing with both primary and general elections that preparation of the ballot and markings thereon must be directed solely by the county commissioners. The court itself is without right or authority to order those officials to add marks of any character, sort or kind, as it did in the present instance. If it believes that fraud is likely to be committed by election officers in conducting an election or by other persons, on petition of one interested it is given power by Act of July 12, 1913, P. L. 738, to ap-

point overseers for the purpose of securing a fair conduct of the election and tabulation of the results, but is entirely without power, as here attempted, to direct in any way performance of duties lodged by act of assembly in the board of county commissioners: Com. v. Mercer et al., 190 Pa. 134. The court states that perforations were made in all districts by its orders, and by its officers, and it has further found in the one district which we are now considering that gross fraud in seven particulars was committed.

These questions gave ground for a contest of the election, and if sustained, not only justified, but made mandatory, the rejection of the entire vote of the district (Bright's Contested Election, 292 Pa. 389; Stem v. Bethlehem Boro., 231 Pa. 461; Carbondale's Election, 280 Pa. 159, 167; West Mahanoy Twp. Contested Election, 258 Pa. 176; Acts of June 10, 1893, P. L. 419, section 19; April 14, 1897, P. L. 23, section 1) unless it should be found possible to separate improperly-marked ballots from those deposited in the box indicating the elector's choice. If so, the vote of the entire district will not be rejected but only such ballots as are marked so unintelligently as to not reasonably indicate the voter's intention: Ayre's Contested Election, 287 Pa. 135; Fish's Election, 273 Pa. 410; Krickbaum's Contested Election, 221 Pa. 521; Knight v. Coudersport Boro., 246 Pa. 284, 290.

In the last case above, where objection had been made to the character of the paper on which ballots were printed, it was stated (page 289): "It was sometimes said, in this connection, that certain provisions of the election laws are mandatory and others directory. These terms may perhaps be convenient to distinguish one class of irregularities from the other; but strictly speaking all provisions of such laws are mandatory, in the sense that they impose the duty of obedience on those who come within their purview. But it does not therefore follow that every slight departure therefrom should taint the

whole proceedings with a fatal blemish. Courts justly consider the chief purpose of such laws, namely, the obtaining of a fair election and an honest return......, and, in order not to defeat the main design, are frequently led to ignore such innocent irregularities of election officers as are free of fraud and have not interfered with a full and fair expression of the voter's choice. ...... When a ballot is not lacking in any matter essential to a free expression in statutory form of the will of the voter, in the absence of fraud, the applicability and completeness of the remedy under the Act of 1893, supra, seem so clear as to require no further discussion; and the conclusion that, under the circumstances at bar, the election should not be set aside is fully sustained, in principle, by our own cases: See Wheelock's Election, 82 Pa. 297, 299; Krickbaum's Contested Election, 221 Pa. 521, 525, 528.''

The original Primary Act (July 12, 1913, P. L. 719, section 5) and its first amendment (Act of June 18, 1915, P. L. 1025) provide that ballots shall not be rejected for technical errors if the intent of the voter can be determined. The later supplementary Act of May 27, 1921, P. L. 680, repeals in both its title and body only existing legislation inconsistent with its provisions. Whatever the effect of this act, if applicable to the question now before us, may be, if the perforations be considered "technical errors," need not be passed upon, since the proceeding here is based on the independent legislation approved in 1927, and under the provisions of the latter statute the court is limited to a recounting of ballots cast, and is not granted the right to pass upon fraudulent conduct of election officers and others, which question can be determined only in contest proceedings.

It will be noticed that the Act of April 23, 1927, P. L. 36, is independent legislation and not a mere supplement to a preceding act. It conferred upon the court of common pleas jurisdiction to recount ballots on petition, alleging generally fraud or mistake, without set-

ting forth specific charges of error. The petition demanding a new tally is authorized at any time within four months from date of casting of ballots, and errors corrected. This was not an amendment to earlier legislation but created an additional and independent remedy: In re City of Hazleton Mayoralty Election, 301 Pa. 14.

It differed from the Act of April 18, 1919, P. L. 72, as amended by Act of May 19, 1923, P. L. 269, regulating the manner of requiring a second tabulation. Under the former legislation, in such case, the petition was necessarily presented within two days of completion of the count, and the decision rendered within three days thereafter, and it was necessary to set forth the specific acts of fraud alleged to have been committed to justify correction by the court of common pleas,—a requirement dispensed with when advantage is taken of the additional and independent remedy provided by the Act of 1927. As has been pointed out in our cases, this later statute, though intended to simplify, has led to confusion.

A distinction has been drawn in all our acts of assembly between a contest of an election and a proceeding for recount of votes. In the latter case, even honest errors of law on the part of election officers are not subject to review, but the record alone can be examined on certiorari to determine if a mistake in tabulation has been made: Plains Twp. Election Returns, 280 Pa. 520. If the contents of the ballot box are in such condition, or such irregularities appear, as to render impossible a correct count, due to fraud, then the returns of the election officers must be accepted, for the recomputation is not a substitute for a contest in which the legality of the votes actually cast may be passed upon. It will be observed that both in the Acts of 1919 and 1927, supra, providing for recount, the right to contest, as provided by other acts of assembly, is expressly reserved. This differentiation between the two classes of cases has been carefully pointed out in Plains Twp. Election Returns, supra.

In the present case, as the court below found, there was such fraud committed in the district questioned as to make impossible determination of the actual vote, and were we dealing with the contest of the election a rejection of the entire return in the particular district would be justified, but this is not a proceeding of that character.

The present proceeding is not a contest, but, as above stated, was begun and prosecuted under the Act of April 23, 1927, P. L. 360. In Dunmore Boro. Election, 299 Pa. 517, 522, followed In re City of Hazleton Mayoralty Election, supra, we held "the court of common pleas had jurisdiction [under that statute] to order a recount of the ballots...... This necessarily includes all ballot boxes used at all elections and for all offices...... [The statute] is not an amendment of the [earlier] acts...... which give power to the judges, who sit to compute and certify election returns to correct irregularities in certain instances, but creates an additional and independent remedy enforceable by any court of common pleas or judge thereof of the county in which the question may arise." If palpable fraud or error in making the computation appears, the judges of the court of common pleas may make the necessary corrections: First Congressional Dist., 295 Pa. 1. But only the question of computation is before the court where the proceeding is based on this statute (Plains Twp. Election, 280 Pa. 520), though the facts set forth in the opinion of the court below in such cases may be taken into consideration in determining the correctness of its conclusion: Smith's Petition, 292 Pa. 140, 141.

Inasmuch as no right of appeal has been given, the record can only be considered as on certiorari. The regularity of the election and the validity of the ballots received cannot be considered, for, as was said in Armstrong's App., 293 Pa. 1, 4, "The Act of 1927, under which the proceedings were had, was passed for the purpose of securing an accurate count and a true return of

the ballots actually cast, and was not intended to and did not disturb the then-existing practice, which required the candidate, who appeared on the face of the returns to be defeated, to contest the election, if he desired a review of the way in which it was conducted or of the votes actually cast."

In view of the finding of gross fraud in the conduct of the election in the district now under consideration, it was impossible for the court to determine the number of ballots properly cast for any of the candidates for governor. Under such circumstances it was justified in accepting the returns of the election officers, though clearly incorrect, leaving the injured parties to other remedies provided by law. "Wherever proceedings are had under the Act of 1927, if the court is satisfied the ballots in the box are not those which were cast by the electors, or that the marks thereon have been changed, so that, in either event, the vote actually cast cannot be ascertained from an examination of the contents of the box, it not only might but should unhesitatingly refuse 'to accept the contents as verity,' should treat the return made by the election officers as correct, and leave the parties to an election contest for the purpose of having their respective rights determined": Armstrong's App., supra, page 5. This follows a like conclusion reached by this court in Smith's Petition, supra.

In view of the record presented, though it clearly appears that the court acted without legal authority in ordering perforation of the ballots, and further, actual fraud was proven, yet the evidence submitted could not justify the court in declaring the actual and true result, and it could therefore do nothing but accept the manifest incorrect return and leave the parties to their right of contest.

We have before us only the appeal dealing with the election district first mentioned, and that finally directing a certification of the vote under Act of May 20, 1921, P. L. 1130, of all districts, dated July 9, 1930. Under

such circumstances, the only correction the court could make, had it authority to make any, would be limited to the precinct named, which would not alter sufficiently the returns to change the nominee as determined by the tabulation made by the secretary of the Commonwealth. Clearly this situation would not justify rejection of the vote of all districts throughout the county where ballots were illegally directed to be perforated by the court. In view of the determination reached that the vote as certified must stand, this need not be discussed.

The Per Curiam order of August 20, 1930, affirming the order of the court below in each appeal, is confirmed.