## In re Petition to Open Ballot Box

*John D. Ray,* for petitioner Kelly.
*Leonard L. Ewing,* for petitioner Taylor.

WILSON, J., December 15, 1941.—The matter before us is a recount of the votes of the eight several precincts of the City of Beaver Falls, cast at the municipal election of November 1941, for members of council, for four years, two to be elected.

After the recount board had terminated its recount of the eight several election precincts of the city, but before such recounts were certified to the county return board, it became known that such recount returns would result in a tie vote between L. W. Kelly, Democrat, and Carl E. Taylor, Republican. At the request of counsel for Mr. Taylor, we, as the judge of the court of common pleas, and head of the recount board, held a special session of court, at which a record was made, upon which an appeal might be taken for review of our

conduct of the recount. Motions were made, argument was heard, we ruled and granted exceptions. Subsequently we put in the record the original and recount return sheets, together with excerpts from our certificates, and a ninth or supplementary certificate. This was done upon the realization that the issues between Kelly and Taylor, arising from the recounts, should not be determined upon but one of our rulings but upon all of them, insofar as they could be determined at the time exception was taken to the one ruling. We directed the opening of the ballot boxes, and designated three competent persons, two Republicans and one Democrat, to correctly count the entire vote. Candidates and watchers were present during the entire recount. We directed the board to bring before us any questioned or questionable ballot, or vote thereon. A number of such were submitted to us by the board, the candidates and watchers being present at our inspection of ballots and hearing our rulings. All our rulings on ballots and votes were in strict conformity with the statutes and decisions, and all questions of fact, as to erasures, etc., were discussed and decided by us in the presence of all. We made no note of the ballots submitted to us, or of the questions of validity passed upon. We presumed that if there was objection it would be noted by the interested parties or their partisans, and be either brought before us again, or be the basis of a contest. Therefore, the only possible index to our rulings was to be found in a comparison of the return sheets. From this, after the correction of palpable error in one precinct, which correction gave Kelly a city majority of from 13 to 18 over Taylor, our rulings so favored Taylor as to wipe out this Kelly majority and reduce the vote to a tie. The tie vote is the sum of all our rulings in all eight precincts. The total of our rulings in the fifth ward is not sufficient to wipe out the error in the first precinct of the seventh ward, and Kelly would still have a majority of from 8 to 13 in the

city. An appellate court should not untie the tie by a reversal of but one ruling, but should, as far as possible, pass upon all our rulings. With this in mind we have made our certificates and are now writing this opinion.

The return of the county board was as follows:

Perry A. Garrett, Democrat......... 1,882
L. W. Kelly, Democrat.............. 2,265
H. B. McCray, Republican.......... 2,600
Carl E. Taylor, Republican......... 2,315

In all, 13 petitions for recount were presented. On the part of L. W. Kelly were petitions for recounts of the fifth ward precinct and the first precinct of the seventh ward. The recount of the first precinct of the seventh ward disclosed errors in computation which increased the Kelly vote 27, and reduced the Taylor vote from 36 to 41 votes, so that the vote then stood:

Kelly ............................ 2,292
Taylor .......................... 2,279

or the election of Kelly by a majority of from 13 to 18. No errors of computation were found in the fifth ward.

Then five other petitions were presented for recounts of the votes cast for other city offices, excepting council in the first ward, second ward, third ward, fourth ward and sixth ward precincts. Following this, six other petitions were presented on the part of Carl E. Taylor, for recounts of the votes cast for all city offices, including council, in the first ward, second ward, third ward, fourth ward, sixth ward, and the second precinct of the seventh ward. If the power and discretion of a recount board, including a judge of the court of common pleas, goes no further than computation, then Kelly was elected, for no error in computation was found other than those in the first precinct of the seventh ward.

But we have certified returns of the recount board which will result in a tie vote, or:

Taylor ......................... 2,265
Kelly ......................... 2,265

This tie vote is the result of the correction of errors in computation, and the acceptance and rejection of certain individual ballots. Among the ballots rejected were 23 in the fifth ward, to which the stubs with the identifying numbers were still attached, so that comparison of such stub numbers with the corresponding numbers in the voters' check list would positively identify the electors voting such ballots. Of these 23 ballots, 1 was marked for Kelly and Taylor; 9 were marked for Kelly; and 13 were marked for Taylor. If these 23 ballots are counted as marked Taylor will be elected by a majority of four votes. A stipulation of counsel was placed of record, to the effect that but one exception and question is before us. Counsel cannot stipulate the court into a corner. We will consider the whole recount, including our other rulings in the matter.

From the state of facts reviewed two questions arise. First: Can a recount board pass upon the validity of a ballot from its conditions and markings, or is it confined to correction of error only as to computation? Second: If the recount board has authority to pass on the validity of a ballot from its conditions and markings, were the 23 ballots in the fifth ward rightfully excluded?

The opening of ballot boxes and the recounting of votes is governed by sections 1701 and 1703 of article XVII of the Pennsylvania Election Code of June 3, 1937, P. L. 1333.

Paragraph (a) of section 1701 reads as follows:

"(a) The court of common pleas, or a judge thereof, of the county in which any election district is located in which ballots were used, shall open the ballot box of such election district used at any general, municipal, special or primary election held therein, and cause the entire vote thereof to be correctly counted by persons

designated by such court or judge, if three qualified electors of the election district shall file, as hereinafter provided, a petition duly verified by them, alleging that upon information which they consider reliable they believe that *fraud or error*, although not manifest on the general return of votes made therefrom, was committed in the computation of the votes cast for all offices, or for any particular office or offices in such election district, *or in the marking of the ballots, or otherwise in connection with such ballots*. It shall not be necessary for the petitioners to specify in their petition the particular act of *fraud or error* which they believe to have been committed, nor to offer evidence to substantiate the allegations of their petition."

Paragraph (*a*) of section 1703 reads as follows:

"(*a*) If any petition to open a ballot box or to recanvass the votes on a voting machine shall have been presented, under the provisions of sections 1701 and 1702 of this act, before the certification of all the returns of the county, and, in no event, later than five (5) days after the completion of the computation and canvassing of all the returns of the county by the county board, and the court shall discover therein any *fraud or error*, the court *shall correct, compute and certify to the county board the votes justly, regardless of any fraudulent or erroneous entries made by the election officers* thereof, and the county board shall correct accordingly any entries previously made in the returns of the county being prepared by it, or which have been prepared and not yet certified."

Prior to the passage of the Pennsylvania Election Code of 1937, the subject under discussion was governed by the Act of April 23, 1927, P. L. 360, which was repealed by the Pennsylvania Election Code, and reënacted in part by sections 1701 and 1703, as quoted, with very material changes. Section 1 of the Act of 1927 reads as follows:

"Section 1. Be it enacted, &c., That the court of common pleas, or a judge thereof, of the county in which any election district, precinct, or division is located, shall open the ballot box of such election district, precinct, or division used at any general, municipal, special or primary election held therein, and cause the entire vote thereof to be correctly counted, by persons designated by such court or judge, if three qualified electors of the ward of a city or borough containing such election district, precinct, or division, or, if the election district, precinct, or division is not contained in a ward, three qualified electors of such election district, precinct, or division, or of a contiguous or adjacent election district, precinct, or division, shall file, as hereinafter provided, a petition and affidavit alleging that, upon information which they consider reliable, they believe that *fraud*, although not manifest on the general return of votes made therefrom, was committed in the computation of the votes cast in such election district, precinct, or division, or in the marking of the ballots or otherwise in connection with such ballots. It shall not be necessary for the petitioners to specify in their petition the particular act of *fraud* they believe to have been committed, nor to offer evidence to substantiate the allegations of their petition."

Section 5 of the Act of 1927 reads in part as follows:

"If any ballot box shall have been opened, under the provisions of this act, before the completion of the computation and canvassing of all of the returns for the county, and the court shall discover therein any fraud or substantial error, it shall correct, compute, and certify to the return judges, or the return board, for the said county, the votes of the election district, regardless of any fraudulent or erroneous entries made by the election officers thereof; and it shall be the duty of the return judges or return board to enter in the returns the figures so certified, and to correct accordingly any entries previously made in the papers being prepared by the said return judges or return board."

Our italicizations indicate the changes. The Act of 1927 covered only fraud in the marking of ballots and error in computation. The Pennsylvania Election Code of 1937 authorizes a recount board to consider "fraud or error" in computation, or fraud or *error* in the marking of ballots, or otherwise in connection with such ballots. Therefore, decisions construing the Act of 1927 are irrelevant. This is particularly so as to Luzerne County Election Returns, 301 Pa. 247, and the cases therein cited.

In the per curiam opinion in Smith's Petition, 292 Pa. 140 (1928), in passing on the Act of 1927, the Supreme Court said:

"In computing the vote cast at an election, the Act of April 23, 1927, P. L. 360, does not give to the court, acting as a computation board, the right to exclude the entire vote cast at any polling place. The duty of such a board is simply to recount and compute the vote; complaints alleging that particular ballots should not have been received at all, belong to a contest of the election, while complaints that ballots received should not have been counted or were incorrectly totaled are proper matters for consideration by the board. This statute does not allow an appeal; therefore an appeal taken from the action of the board is but a certiorari, and on such an appeal judicial review is restricted to the regularity of the record, though in this class of cases, in passing on the regularity of the record, findings of fact contained in the opinion of the court below may be considered so far as they concern fundamental questions."

In Hazleton City Mayoralty Election, Gerlach's Appeal, 301 Pa. 14, the opinion of Mr. Justice Simpson says (p. 18):

"The 3rd inquiry of appellant is: 'Had the court below authority to review honest errors of law committed by the election officers?' Under prior statutes they had not (Plains Township Election Returns, 280

Pa. 529) ; but, as already pointed out, the Act of 1927 'creates an additional and independent remedy.' It is not in pari materia with the earlier acts; on the contrary, its purpose, as expressed in section 1, is to 'cause the entire vote . . . to be correctly counted,' and if, as section 5 specifies, 'the court shall discover any fraud or *substantial error*' it must correct the returns made by the election officers and certify its conclusion 'regardless of any fraudulent or *erroneous* entries made by' them. Even without the liberal construction which we are required to give to the statute, we would have to decide that, under it, the recounting judges had the duty of correcting the erroneous, though honest, acts of the election officers, so far as they were disclosed by the court's inspection of the ballots. Indeed, as we know from the history of this legislation, the necessity for doing so was one of the principal reasons for its passage —the correction of fraudulent acts of the election officers being provided for by earlier statutes."

In Edwards v. Prutzman et al., 108 Pa. Superior Ct. 184 (1933), where a recount board, by the court, had employed a handwriting expert to pass on the markings of ballots, the Superior Court said:

"The appellant argues that under the Act of April 23, 1927, P. L. 360, the court was required merely to see that a recount of the ballots was made, and that it exercised no judicial function. The act referred to in Section 1 provides that upon proper petition being presented the court shall open the ballot boxes, and shall designate persons to count the vote, that if upon opening the ballot boxes it is found that either fraud or substantial error was committed the court shall certify the fact to the prothonotary to enable the ballot boxes and contents thereof to be available as evidence. The reference in the act is to 'the court.' The recounting of the votes is the object of the proceeding, Luzerne County Election Returns, 301 Pa. 247; 151 A. 897; Hazleton City Election, 301 Pa. 14, 151 A. 586; Arm-

strong's Appeal, 293 Pa. 1, 141 A. 633; and in so doing, the court is to ascertain whether there is any fraud or substantial error appearing. This requires something more than the mere counting of the votes. It involves the exercise of judicial functions to decide whether certain votes shall be counted or not. These are legal questions, which are to be considered and determined by the court, Hazleton City Election, supra."

Without doubt the conflict in the construction of the Act of 1927 between Luzerne County Election Returns, supra, and Hazleton City Mayoralty Election, supra, prompted the 1937 alterations in recount proceedings, which alterations were made to conform with Mr. Justice Simpson's opinion in the Hazleton City election case.

In passing on the Pennsylvania Election Code of 1937, in Fishingcreek Township Election Case, 144 Pa. Superior Ct. 277, the Superior Court said (p. 281):

"The findings of the court below are always entitled to the fullest credit, especially in the type of a case now before us, as it has an opportunity to inspect and pass upon the validity of each of the ballots, and if palpable fraud or error in making the computation appears, the court may make necessary corrections: *Armstrong's Appeal*, 293 Pa. 1, 4, 141 A. 633; *First Congressional District Election*, 295 Pa. 1, 144 A. 735; *Dunmore Borough Election*, 299 Pa. 517, 526, 149 A. 733; *Luzerne County Election Returns*, 301 Pa. 247, 151 A. 897; *McCaffrey's Appeals*, 337 Pa. 552, 11 A. 2nd 893. The primary purpose of our statute is to secure an accurate count and a true return of the ballots actually cast at an election, and this was done."

As President Judge Swoyer, of Wayne County, in In re Hawley Borough Election, 31 D. & C. 146 (1937), could not harmonize the conflict between the Luzerne County and Hazleton City case, he divided his opinion equally between them, without considering the subject matter of the Luzerne County case, and the obvious

agreement of the per curiam opinion in Smith's Petition, supra, with the opinion in the Hazleton City case. He also seems to assume that the Acts of 1927 and 1937 are identical, when, as we have shown, they are not. In addition, he also overlooks sections 1223 and 1224 of the Act of 1937, as to "what ballots shall be counted", and "ballot decisions". And to be sure he did not have the benefit of the opinion of Mr. Justice Patterson in McCaffreys' Appeals, 337 Pa. 552 (1940). Therefore, we cannot agree with Judge Swoyer, much as we respect him, nor is it necessary to dissect and discuss his opinion.

In McCaffreys' Appeals, supra, we find the following (p. 554) :

"Upon petition of appellants, Mary A. McCaffrey et al., under section 1701 of the Act of June 3, 1937, P. L. 1333, the ballot box was opened by the court of common pleas and a recount was made. Corrections were made by the court and the correct count was certified to the county board in accordance with section 1703. The county board revised its return in obedience to the court's certificate, reducing the plurality of Michael McCaffrey to 2 votes.

"Thereupon, Mary A. McCaffrey et al. appealed from the 'order or decision' of the county board changing its entries, asking the court to direct the board to exclude 4 ballots passed upon and counted by the court for Michael J. McCaffrey in the prior proceeding, which ballots appellants alleged were erroneously so counted by the court." And further at page 557 it is said :

"Although not necessary to the decision, and not strictly within the scope of review by appellate courts in cases of this kind *(Smith's Petition, 292 Pa. 140; Springdale Election Recount, 307 Pa. 312; Rimer's Contested Election, 316 Pa. 342; Carroll's Appeal, 336 Pa. 257)*, we state it to be our conclusion that all four of the ballots in dispute were properly counted for

Michael J. McCaffrey by the court in the recount proceedings."

There follows a discussion of the four ballots as to condition, markings, etc., clearly indicating that each individual ballot must be considered by a recount board just as it is considered by an election board, and the validity of it or any vote thereon must be determined under the statutes, and such decisions as McCaffreys' Appeals, supra, Gegg's Election, 281 Pa. 155, and similar cases.

All doubt as to the meaning of McCaffreys' Appeals is dispelled when we consider the changes made in the law of recounts by the Pennsylvania Election Code of 1937, already noted, in connection with sections 1223 and 1224 of said act. Paragraph (a) of section 1223 is as follows:

"(a) No ballot which is so marked as to be capable of identification shall be counted. Any ballot that is marked in ink or by anything but pencil or indelible pencil shall be void and not counted. Any ballot marked by any other mark than an (X) in the spaces provided for that purpose shall be void and not counted: Provided, however, That no vote recorded thereon shall be declared void because a cross (X) mark thereon is irregular in form. Any erasure, mutilation or defective marking of the straight party column at November elections shall render the entire ballot void, unless the voter has properly indicated his choice for candidates in any office block, in which case the vote or votes for such candidates only shall be counted. Any erasure or mutilation in the vote in any office block shall render void the vote for any candidates in said block, but shall not invalidate the votes cast on the remainder of the ballot, if otherwise properly marked. Any ballot indicating a vote for any person whose name is not printed on the ballot, by writing, stamping or sticker, shall be counted as a vote for such person, if placed in the proper space or spaces provided for that purpose, whether or not an (X) is placed after the name of such

person: Provided, however, That if such writing, stamping or sticker is placed over the name of a candidate printed on the ballot, it shall render the entire vote in said office block void. If an elector shall mark his ballot for more persons for any office than there are candidates to be voted for for such office, or if, for any reason, it may be impossible to determine his choice for any office, his ballot shall not be counted for such office, but the ballot shall be counted for all offices for which it is properly marked. Ballots not marked, or improperly or defectively marked, so that the whole ballot is void, shall be set aside and shall be preserved with the other ballots."

Paragraph (b) of section 1223, as amended by the Act of June 19, 1939, P. L. 450, reads:

"(b) At November elections, a cross (X) mark in the square opposite the name of political party or political body in the party column shall be counted as a vote for every candidate of that party or body so marked, including its candidates for presidential electors, except for those offices as to which the voter has indicated a choice for individual candidates of the same or another party or body in any office block, in which case the ballot for such office block shall be counted only for the candidates thus individually marked, notwithstanding the fact that the voter has made a mark in the party column, and even though in the case of an office for which more than one candidate is to be voted for, he has not individually marked for such office the full number of candidates for which he is entitled to vote."

Section 1224 is as follows:

"Decisions concerning questionable marks on ballots or defacing or mutilation or ballots, and the count to be recorded thereon, shall be made in the same manner as decisions concerning the qualifications of voters, as provided in section 1213 herein."

If there is any question that an election board must follow the statutes and decisions in disposing of each

individual ballot, and each marking in the straight party column and in each office block, and that a recount board, composed of a judge of the court of common pleas and his appointees, cannot and must not, we are unable to perceive it. A recount board has all the powers, duties, and discretions of an election board, and in addition has been invested with judicial authority, from which no appeal lies except on certiorari. The recount board's disposition of individual ballots was clearly within such board's powers and duties, and to hold otherwise would in effect repeal the recount law, and render such a proceeding less than ridiculous. A recount board is no longer a mere adding and "computing" machine, that could only correct fraud, error, or mistake by an election contest, to be heard by the very court that creates and really constitutes the recount board. A recount board is now a judicial body, vested with full power to act as such.

The second question, arising from the stubs with the identifying numbers intact, attached to the 23 ballots in the fifth ward, which the election board counted, and which the recount board excluded, finds its answer in the first sentence of paragraph (a) of section 1223, above quoted, that "No ballot which is so marked as to be capable of identification shall be counted."

Secrecy of the ballot is the keystone of our modern election system. Laws similar to the clause just quoted have been adopted by every State in the Union. This is in pursuit, not only of purity of elections, and the expression of the sovereignty of majorities, but also to hedge the liberty of the citizen, so that he may enter and leave the voting booth a free man. To count a ballot which can be clearly or absolutely identified as that of a particular elector not only furthers fraud and bribery, but opens the door to all manner of coercions, and at one blow strikes down our election structure which was all too slow in building. If one ballot with the identifying numbered stub attached can be counted,

then all ballots could be so distributed to the voter, counted, and the Australian Ballot System destroyed. We believe that the language of the legislature is all-embracing, including every conclusive identifying mark, regardless of how such mark may appear on the ballot found in the box, and whether made by the act of the voter or the act of another. Election boards and recount boards cannot count a conclusively identifiable ballot. To construe the law otherwise would call for further legislative action; but in our opinion the legislature has already acted, with an intent that is clearly expressed. To be sure it does not seem right that an innocent elector should be disenfranchised by the error of an election officer. But the error might be an intentional circumvention of the secret ballot. Fraud of an election board may disenfranchise a whole city, or even a State. The identifying number on the corner of the ballot must be torn off in the presence of an election officer (see paragraph (d), sec. 1214), before the ballot is deposited in the box, and if not so removed the ballot is void and shall not be counted. Every time an election officer permits a ballot to be cast without the corner being removed he disenfranchises his honest neighbor. The law in Pennsylvania is quite liberal as to identifying mark. See McCaffreys' Appeals, supra. But neither that case, nor any other, has ever approved a ballot which could be absolutely identified. To us there is no choice between the alternatives of disenfranchisement of an elector or destruction of our election system. Electors may be and are disenfranchised in many ways, and by acts of election officers. It is better that such should be than that we return to the "vest pocket" ballot and the riots of election day. We believe that a great, vital, and inviolate principle is at stake, and that the transitory hurt of a few should not bring lasting harm to all.

In Minnesota the decisions as to identifying marks are more than informative. In Pye v. Hanzel, 200

Minn. 135, 273 N. W. 611, the Supreme Court of that State said (p. 138) :

"It is claimed that certain ballots cast for the contestant were erroneously rejected upon the ground that they have identification marks upon them and hence were illegally cast. Elections are governed by statutes. The general principle underlying these statutes is that every voter should have the opportunity to vote and have his vote counted as cast. In order to insure this right, the Australian ballot system has been adopted, which provides that the ballot be and remain secret. To accomplish this purpose, the statute provides that a uniform and indistinguishable mark be used by the voter to indicate his choice. . . . It was held that it was unnecessary that the mark be of such a character as to enable every person inspecting it to identify the voter, and that the purpose of the statute in prohibiting marks of identification is not only that of secrecy, but in part, perhaps mainly, to prevent the corruption of voters and to secure a free and untrammeled expression of public will. In that case it is stated: 'Any mark placed upon a ballot, therefore, by which the voter may be identified by any person, vitiates the ballot.' "

In Michigan the inspector of elections is to tear off the corner number. It does not appear that the law provides that if deposited with the corner on the ballot is void. In Hailwood v. Board of State Canvassers, 286 Mich. 240, 281 N. W. 631, the Supreme Court of that State held (p. 242) :

"We issued an order to show cause and, from a return thereto, it appears that the ballots cast in Paris township, precinct No. 3, Kent county, despite the provisions of 1 Comp. Laws 1929, §3112, which reads in part: '. . . the inspector shall tear off the corner of the ballot, where perforated, containing the number and identification and shall then, in the presence of the elector and the board of inspectors, deposit without opening the ballot or each of said ballots in the proper

ballot box . . .'—bore a distinguishing mark, to-wit, a number which could correspond to the same number found upon the poll list and each of such ballots could thereby be identified as that cast by a certain elector, thereby violating both the spirit and the letter of the quoted statute which seeks to preserve the secrecy of the ballot."

In Washington defective ballots were given several voters. In declaring such ballots void, in State ex rel. Morgan v. Aalgaard, 194 Wash. 574, 78 P. (2d) 596, the Supreme Court of that State declared (p. 582) :

"Ballots for any election called for by statute should be prepared with the greatest care. The officers responsible for the preparation of the ballots must devote their most particular attention to seeing that all of the ballots furnished for the use of voters comply in every way with the statute. Some responsibility also rests upon the voter. If he is offered a manifestly defective ballot, he should ask for a proper one, and if he does not do so, cannot complain if his vote is not counted.

"The principle underlying the question now under discussion is of great importance, and we are clearly of the opinion that it must be held that the trial court erred in holding that the three defective ballots should be counted for respondent, even though three witnesses testified that they had cast these identical ballots and intended to vote for candidate Morgan. These ballots cannot be counted."

We have been unable to find any case in Pennsylvania or elsewhere similar to the question before us except Corn et al. v. Blackwell et al., 191 S. C. 183, 4 S. E. (2d) 254, in which ballots identifiable from the stubs were excluded, by the manner in which ballots, stubs, and check lists were placed in the ballot box by the election officers, and this, even after the identifying corner had been removed. In this case, the Supreme Court of South Carolina said (p. 256) :

"Purely by inadvertence all of the tickets used in this election were printed and numbered regularly from number 'one' on up to hundreds. This number was not perforated so that it could be torn from the ticket and all but a few of the tickets voted had the numbers on them which corresponded to the numbers opposite the name of the voter, so that it was easy to determine how each man voted. This destroyed the legality of these votes as it violated the secrecy of the ballot, and therefore they should be rejected.

"A few of the votes, probably fifteen or sixteen in number, were not voted with the number on them. That is to say, these votes had the numbers torn off and no number or identification mark was on these votes by which it could be determined who voted them, but the stubs were also placed in the ballot box with the ballots and it is easy to identify each of these ballots by comparing the stubs and ballots and thereby determine who voted each of these ballots. This destroyed the legality of these votes as it violated the secrecy of the ballot and therefore they should be rejected. There being no legal votes cast, there was no election."

Following our certification of recounts with the county return board, counsel for Mr. Taylor filed a number of exceptions, which we have dismissed, with exception granted. We have tried to make a record ripe for review. A recount by a judge of the court of common pleas is a judicial act, and review on appeal is only in the nature of a certiorari. This is the appropriate remedy, else all that would be necessary to indefinitely delay the mandate of an election would be the opening of a ballot box for a recount, and then try each issue of fact and law to the end of time. The decisions of the court on recounts, in the absence of fraud or mistake in computation, are necessarily final. We are convinced that the tie vote should stand, and that we made no error as to either fact or law. But if we were in error as to the exclusion of the 23 stub-numbered

ballots, and were powerless beyond merely the correction of computation, then we were in error in all our decisions as to individual ballots and their markings, and if our errors are all excluded, insofar as can now be determined, then Mr. Kelly was elected and this though the 23 stub ballots be counted as marked.

## Order

And now, December 15, 1941, for the reasons appearing in the foregoing opinion, motion of counsel for Carl E. Taylor that the 23 ballots with the stubs attached, upon which were the absolutely identifying numbers, be declared valid and counted, be and the same is hereby overruled and refused; and it is further ordered that the exceptions to our certificates of recount filed by counsel for Carl E. Taylor be and the same are hereby overruled and dismissed.