482 A.2d 600

**COMMONWEALTH of Pennsylvania**

v.

**Gwendolyn Marie Swank KERSTEN, a/k/a Gwendolyn Marie McFadden, Appellant.**

Superior Court of Pennsylvania.

Argued May 16, 1984.

Filed Sept. 21, 1984.

Petition for Allowance of Appeal Denied April 21, 1985.

348

Anne N. John, Uniontown, for appellant.

John M. Zeglen, Assistant District Attorney, Uniontown, for Commonwealth, appellee.

Before CAVANAUGH, POPOVICH and HESTER, JJ.

HESTER, Judge:

Appellant, Gwendolyn Marie Kersten, also known as Gwendolyn Marie McFadden, on January 18, 1979, was charged with criminal homicide and criminal conspiracy stemming from the death of her son, William Swank. The jury, on July 16, 1979, found appellant guilty of third degree murder and criminal conspiracy. Post-verdict motions were filed and denied. On February 15, 1980, appellant was sentenced to undergo imprisonment for not less than ten years nor more than twenty years for the third degree murder conviction. For the criminal conspiracy conviction, appellant was sentenced to undergo imprisonment for not less than five years nor more than ten years. These sentences were imposed consecutively. Defense counsel did not file a Notice of Appeal from the judgment of sentence despite appellant's request.

Appellant filed a petition for post conviction relief alleging counsel's ineffectiveness for not appealing her conviction. Appellant's counsel was found to be ineffective; consequently, this appeal nunc pro tunc from the judgment of sentence was allowed. We affirm.

Appellant's first argument is that the criminal conspiracy verdict was against the sufficiency of the evidence.[1]

In *Commonwealth v. Anderson*, 265 Pa.Super. 494, 501, 402 A.2d 546, 549 (1979), the Superior Court said:

> Among the circumstances relevant, but not sufficient by themselves, to prove a corrupt confederation are (1) association between alleged conspirators, (citations omitted); (2) knowledge of the commission of the crime, (citations omitted); (3) presence at the scene of the crime, (citations omitted); and (4) in some situations, participation in the object of the conspiracy, (citations omitted). However, while such circumstances are insufficient standing alone, they may furnish a web of evidence linking an accused to the alleged conspiracy beyond a reasonable doubt "when viewed in conjunction with each other and in the context in which they occurred." *Commonwealth v. Clark*, 256 Pa.Super. 97, 103, 389 A.2d 619, 621 (1978) (citations omitted).

. . . . .

However, such evidence must be of a volume and quality sufficient to overcome the presumption of innocence and satisfy the factfinder of a defendant's guilt beyond a reasonable doubt. A conviction of conspiracy cannot be based on mere suspicion or conjecture. *Commonwealth v. DiEmidio*, 410 Pa. 172, 176, 188 A.2d 750, 752 (1963).

Under the attendant circumstances, the testimony of the co-conspirator, Lloyd Gilbert McFadden, established criminal conspiracy. It has long been the law of Pennsylvania that the uncorroborated testimony of a co-conspirator is sufficient to establish all elements of criminal conspiracy. *Commonwealth v. Contakos*, 492 Pa. 465, 424 A.2d 1284 (1981).

**1.** Appellant does not in fact argue that the verdict was against the sufficiency of the evidence. Instead, she argues that the lower court erred in denying her demurrer to the charge of criminal conspiracy. Whether the trial court properly denied the demurrer is not a matter for appeal once, as here, the defendant proceeds with her case following the denial. The issue becomes one of sufficiency of the evidence. *Commonwealth v. Ilgenfritz*, 466 Pa. 345, 353 A.2d 387 (1976).

■ The test to be applied is whether the evidence and all reasonable inferences therefrom are sufficient to support a finding by the jury that the defendant was guilty beyond a reasonable doubt. *Commonwealth v. Wimberly,* 488 Pa. 169, 411 A.2d 1193 (1979). The testimony of the co-conspirator, Gilbert McFadden, was sufficient to establish all elements of the criminal conspiracy against appellant.

Appellant's next argument is that the co-conspirator's hearsay testimony was improperly admitted.

■ To lay a foundation for the co-conspirator exception to the hearsay rule, the Commonwealth must prove that: (1) a conspiracy existed between declarant and the person against whom the evidence is offered and (2) the statement sought to be admitted was made during the course of the conspiracy. In addition, there must be evidence other than the statement of the co-conspirator to prove that a conspiracy existed. *Commonwealth v. Basile,* 312 Pa.Super. 206, 458 A.2d 587 (1983).

■ The order of proof is within the discretion of the lower court, which may, upon only slight evidence of the conspiracy, admit such statements subject to later proof of the conspiracy. *Commonwealth v. Plusquellic,* 303 Pa.Super. 1, 449 A.2d 47 (1982).

■ The testimony of Gilbert McFadden identified the numerous instances of physical punishment appellant inflicted upon her son, William Swank. McFadden also testified that he repeatedly lied to relatives about the boy's condition in order to cover up appellant's beating of the boy. These beatings culminated in the boy's death. Thus, the declarations of appellant, made to her co-conspirator Gilbert McFadden in furtherance of the conspiracy, were admissible.

Appellant's third argument is that the testimony of Gilbert McFadden was so incredible that the jury could only base its decision on mere conjecture or surmise. Thus, the lower court should not have permitted the verdict to stand.

■ The credibility of a witness is within the exclusive province of the fact finder. "The fact-finder is free to believe all, part or none of the evidence." *Commonwealth v. Rose,* 463 Pa. 264, 268, 344 A.2d 824, 826 (1975).

■ The fact-finder's decision is not to be disturbed unless the "evidence offered to support a verdict of guilty is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, ..." *Commonwealth v. Farquharson,* 467 Pa. 50, 60, 354 A.2d 545, 550 (1976). After a review of the record, we hold that Gilbert McFadden's testimony was credible and the jury had sufficient evidence upon which to base its decision.

■ Appellant's fourth argument is that the prosecution's recurrent questions concerning her condition after learning the death of her child were so improper as to prejudice the jury. Initially, we consider this issue as waived for it was not part of appellant's post trial motions. *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975). This argument is also lacking in merit. Both Carl Sneldon and Mary Bittenger testified that appellant looked nervous and then began to cry upon hearing of her child's death. We do not see how this testimony could be prejudicial or could have tainted the jury's decision. In *Commonwealth v. Hoss,* 469 Pa. 195, 210, 364 A.2d 1335, 1343 (1976), the Pennsylvania Supreme Court stated:

> But even where the language of the District Attorney is intemperate, uncalled for and improper, a new trial is not necessarily required (citations omitted). The language must be such that its "unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict." *Commonwealth v. Simon,* 432 Pa. 386, 394, 248 A.2d 289, 292 (1968).

Since the testimony elicited by the prosecution on cross-examination could actually be viewed as helpful to appellant, her fourth argument is without merit.

Appellant also contends that the evidence did not establish the element of malice and the causal relationship necessary for the third degree murder conviction.

■ The Pennsylvania Supreme Court has established that malice may be inferred from attending circumstances. It consists either of an express intent to kill or inflict great bodily harm, or of a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, indicating unjustified disregard for the probability of death or great bodily harm. *Commonwealth v. Matthews*, 480 Pa. 33, 389 A.2d 71 (1978); *Commonwealth v. Lawrence*, 428 Pa. 188, 236 A.2d 768 (1968).

The medical testimony of Dr. Manuel Peleaz, who performed the autopsy on the 2½-year-old boy, showed extensive bruises, burns and lacerations. The internal examination disclosed a vertical laceration of the rectal wall which caused peritonitis, an inflammation of the internal lining of the abdominal organs and the abdominal wall. This laceration resulted from the application of pressure to the victim's rectal wall. There was also extensive hemorrhaging of the left kidney due to trauma. It was the doctor's opinion that none of these wounds or contusions was self-inflicted. The cause of death was peritonitis, with the laceration of the rectal wall and acute bronchial pneumonia as contributing factors.

The doctor's testimony was consistent with Gilbert McFadden's testimony of appellant repeatedly beating the victim. Mr. McFadden also described how appellant would lie on the boy. On the day of Billy Swank's death, appellant, while holding him upside down by the feet, dropped him into the sink and punched him in the stomach.

■ In sum, the medical testimony intertwined with Mr. McFadden's testimony established the causal relationship and that appellant possessed the requisite malice necessary for a finding of third degree murder.

Appellant's next contention is that her counsel was ineffective for failing to object to the introduction of a prejudicial picture. The picture in question depicted a hairbrush appellant allegedly utilized to murder her son.

In analyzing a claim of ineffectiveness of counsel, it must be first determined whether appellant raises an issue of arguable merit, and, if he does, the approach emphasized by counsel must then be examined in light of the available alternatives to determine whether he had some reasonable basis designed to effectuate his client's interests. *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975); *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967).

In determining the admissibility of potentially inflammatory photographs, the court must apply a balancing test of whether or not photos are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors. If the court deems these photographs not to be inflammatory, then they are admissible as any evidentiary items subject of course to qualifications of relevance. *Commonwealth v. Hudson*, 489 Pa. 620, 414 A.2d 1381 (1980).

Applying these principles to the immediate case, a black and white photograph was introduced by the Commonwealth as part of its rebuttal. The picture was taken January 18, 1978, at approximately 8:00 p.m., of appellant's bathroom. Detective Jones testified that the photograph accurately depicted what he saw at the time the photograph was taken.

Appellant denied owning a hairbrush. The prosecutor was properly exercising his rebuttal powers to impeach appellant's credibility by introducing the photograph of the hairbrush into evidence. Hence, counsel's objection would have been fruitless. The value of the evidence outweighed its possible prejudicial effect. Accordingly, appellant's counsel cannot be deemed ineffective for not pursuing a

baseless issue. *Commonwealth v. Miller*, 494 Pa. 229, 431 A.2d 233 (1981).

Appellant's second ineffectiveness claim is that counsel failed to move for suppression of an oral statement made during an allegedly unconstitutional interrogation.

 Pennsylvania courts have enounced that although failure to file a suppression motion may be evidence of ineffective assistance of counsel, if the grounds underpinning the suppression motion are without merit, counsel will not be deemed ineffective. *Commonwealth v. Kennedy*, 271 Pa.Super. 1, 411 A.2d 1249 (1979); *Commonwealth v. Ransome*, 485 Pa. 490, 402 A.2d 1379 (1979).

The oral statement in dispute is exposed by the following colloquy:

Q. Did Gwendolyn Kersten make any statements, say anything to you regarding the death of the child?

A. She did. The first thing she said to me after recognizing that I was in the (hospital) room was, "Mr. Hunchuck, you know I love Billy. You know we love him. We didn't mean to do it. We didn't mean to do it." Knowing nothing what she was talking about, I advised her that the best thing was for her to be quiet until she is finished, that I would talk to her after she was done with the other people in the room.

. . . . .

COURT: Were those statements made by the defendant pursuant to questions asked by you?

WITNESS: Yes, your honor, I asked her nothing. This was voluntary, and I had no chance to stop her. She just blurted them out to me.

(N.T. July 16, 1979, pp. 11, 12). These statements were made to County Detective Hunchuk who knew appellant. They were made in the hospital waiting room while the victim was receiving emergency medical attention. Therefore, the primary question is whether the general conversation constituted an interrogation. The secondary determination is whether the appellant's statement was voluntary.

■ In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966), the United States Supreme Court stated, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."

■ In *Commonwealth v. Simala*, 434 Pa. 219, 252 A.2d 575, (1969), the Supreme Court defined interrogation as "not simply custody plus 'questioning,' as such, which calls for the *Miranda* safeguards, but custody plus police *conduct* . . . calculated to, expected to, or likely to, evoke admissions."

*Id.*, 434 Pa. at 226, 252 A.2d at 578 [quoting Institute of Continuing Legal Education, "Criminal Law and the Constitution—Sources and Commentaries" 356 (1968) (Emphasis in original) ]; See also *Commonwealth v. Smith*, 313 Pa.Super. 138, 459 A.2d 777 (1983). "The requirement of 'interrogation' is designed to permit the use by the prosecution of a confession that is given by an accused *without any prompting*, before warnings can be given." *Simala, supra*, 434 Pa. at 226, 252 A.2d at 578, 579. (Emphasis in original).

■ Based upon the standards enunciated by our Supreme Court and the United States Supreme Court, the hospital conversation did not constitute an interrogation. Appellant was voluntarily in the hospital awaiting word on the condition of her son. Although the officer approached appellant, he had no opportunity to address her prior to the admission. At that moment, the situation did not yet require Miranda warnings.

■ Counsel did not have sufficient grounds to move for the suppression of the oral statement. Hence, counsel cannot be held ineffective for not advancing a baseless claim. *Kennedy, supra.*

■ Appellant's final contention is that the Commonwealth should have called certain witnesses, and that the

absence of these witnesses raised a presumption that their testimony would have been contrary to the Commonwealth's case. For this alleged reason, it is argued that the judge erred in refusing to instruct the jury that the absence of these witnesses resulted in a presumption that their testimony would have been favorable to the accused and unfavorable to the Commonwealth.

After a review of the record on this issue, we conclude that this argument is devoid of merit. Accordingly, we dismiss it summarily.

In accordance with our rejection of the above arguments, we affirm the judgment of sentence.

Judgment of sentence affirmed.