520 A.2d 439

**COMMONWEALTH of Pennsylvania**

v.

**Louis T. CHERPES, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 4, 1986.

Filed Jan. 20, 1987.

248

Thomas A. Livingston, Pittsburgh, for appellant.

John H. Reed, Harrisburg, for Com., appellee.

Before CIRILLO, President Judge, and ROWLEY and POPOVICH, JJ.

CIRILLO, President Judge:

This is an appeal from a judgment of sentence for violation of the State Ethics Act and for unsworn falsification. We affirm.

The following issues are presented for our review: (1) whether the evidence was sufficient to convict appellant for violating the State Ethics Act and having committed the offense of Unsworn Falsification to Authorities; (2) whether the trial court erred in the admission of evidence; (3) whether the trial court erred in denying appellant's request for a non-jury trial; (4) whether the judge erred in failing to recuse himself; (5) whether the trial court erred in imposing sentence; (6) whether the fine imposed was a violation of 65 P.S. § 409(c), 42 Pa.C.S. § 9726(c)(d), and Pa.R.Crim.P. 1407(c); (7) whether 65 P.S. § 409(c) is unconstitutional; (8) whether the trial court erred in refusing to allow appellant to respond to the Commonwealth's argument; and (9) whether the conviction and sentence violate 65 P.S. § 407(9), as well as deprive appellant of the due process of law.

We will first summarize the salient facts as found by the trial court. Appellant, Louis T. Cherpes, conducted his own insurance agency in Ross Township, Allegheny County. He also conducted business through a West Virginia corporation known as Allegheny Consulting, Inc., and a Pennsylvania corporation known as Scurdo Industries.

In 1980, at the time of the alleged offenses, Cherpes served as Chairman of the Board of Commissioners of Ross Township, an elective position. At this time, the Board was considering a proposal for a new shopping mall by Frank Nascone, a real estate developer.

In April of 1980, while serving as Chairman of the Ross Township Board of Commissioners, Cherpes wrote to one of Mr. Nascone's companies, Maret Development Corporation, to solicit insurance business. Maret accepted Cherpes's bid for a large-scale, three-year policy. As agent for this policy, Cherpes received a standard commission which amounted to approximately $66,000.

One month later, on May 12, 1980, the Ross Township Board of Commissioners began formal action on Nascone's proposed development, called the "Ross Park Mall." On that date, Cherpes asked the township solicitor to draft a proposed ordinance endorsing Nascone's application to rezone the land for his proposed development from residential to commercial.

On August 11, 1980, the Board approved an ordinance which rezoned Nascone's land from residential to commercial. Cherpes voted in favor of this ordinance.

On September 14, 1981, Cherpes again voted in favor of ordinances which rezoned additional land needed for Nascone's development. On December 14, 1981, the Board voted 5-4, with Cherpes in favor, to accept a deed from Nascone to the township for dedication of land to be used as a public street to connect the new Ross Park Mall development with an existing street. Prior to the above vote, in response to Cherpes's request, the township solicitor informed Cherpes that "he knew of no reason why [Cherpes] could not vote." At three subsequent meetings, Cherpes also cast his vote as a Board member in favor of Nascone's development.

On or about April 24, 1981, Cherpes filed a financial disclosure statement, as required by law, but failed to include income derived from his insurance business or any income greater than $500 from a single source, as required by the Ethics Act.

The evidence therefore indicates that Cherpes sought the insurance business of Nascone, who was seeking concessions from the Board of which Cherpes was chairman. The record also discloses that the insurance agency which had formerly handled Nascone's business was unceremoniously dropped. Nascone's insurance policy was the largest that Cherpes had ever handled and it was secured without competitive bidding.

We will discuss the issues seriatim.

## I

Cherpes asserts that the evidence presented at trial was insufficient to support his conviction for violation of the State Ethics Act, 65 P.S. §§ 403(a) & (b), and Unsworn Falsification to Authorities, 18 Pa.C.S. § 4904(a). We find that the evidence presented at appellant's jury trial was sufficient to sustain his convictions.

Our standard of review in assessing the sufficiency of the evidence is to "view the evidence in the light most favorable to the Commonwealth as verdict winner, and accept as true all evidence and reasonable inferences therefrom, upon which if believed, the fact finder could properly have based its verdict." *Commonwealth v. Taraschi*, 327 Pa.Super. 179, 185, 475 A.2d 744, 747 (1984).

### A.

 The sections of the State Ethics Act which the jury found Cherpes to have violated, 65 P.S. §§ 403(a) & (b), provide that:

(a) No public official or public employee shall *use his public office* or any confidential information received through his holding public office *to obtain financial gain* other than compensation provided by law for himself, a member of his immediate family, or a business with which he is associated.

(b) No person shall offer or give to a public official or public employee or candidate for public office or a member of his immediate family or a business with which he is associated, and *no public official* or public employee or candidate for public office *shall solicit or accept, anything of value,* including a gift, loan, political contribution, reward, or promise of future employment *based on any understanding that the vote,* official action, or judgment *of the public official* or public employee or candidate for public office *would be influenced thereby.*

(Emphasis added).

The record indicates that Cherpes solicited business for his insurance agency from a developer who needed the

approval of the Board of Commissioners, on which Cherpes sat, in order for the development to succeed. It is also clear that the developer changed from his former insurance agency and gave Cherpes a substantial premium for a large policy shortly before Cherpes voted as a Board member in favor of several proposals presented to the Board by the developer.

Viewing all the evidence in the light most favorable to the Commonwealth as the verdict winner, and drawing all reasonable inferences therefrom, we conclude that the jury could find beyond a reasonable doubt that Cherpes used his position as Board member to gain the insurance premium from the developer with the understanding that Cherpes's vote would be influenced thereby. Thus, we are satisfied that the elements of §§ 403(a) & (b) have been satisfied beyond a reasonable doubt.

■ Cherpes argues, however, that the trial court's grant of a motion for judgment of acquittal on a bribery charge, pursuant to 18 Pa.C.S. § 4701, established that the insurance premium was not received in exchange for Cherpes's favorable votes. Section 4701(a)(1) provides:

A person is guilty of bribery, a felony of the third degree, if he offers, confers or agrees to confer upon another, or solicits, accepts or agrees to accept from another: (1) any pecuniary benefit as consideration for the decision, opinion, recommendation, vote or other exercise of discretion as a public servant, party official or voter by the recipient. . . .

The elements of § 403(b) and § 4701(a)(1) are not the same. The plain language of § 403(b) refers to an understanding that a vote will be *influenced by* a public official's acceptance of something of value. Section 4701(a)(1) refers to the acceptance of a pecuniary benefit *as consideration for* the public official's vote. Thus, § 403(b) contemplates a much broader scenario than a simple *quid pro quo* transaction.

We also find support for our conclusion in principles of statutory interpretation. When seeking to construe legislative intent, we are instructed "to look to the occasion and

necessity for the enactment, the circumstances under which it was enacted, the mischief to be remedied and the object to be obtained." *Township of Moon v. Police Officers of the Township of Moon,* 508 Pa. 495, 504, 498 A.2d 1305, 1309 (1985); 1 Pa.C.S. § 1921(c).

When the Pennsylvania Legislature enacted the State Ethics Act, of which 65 P.S. § 403(b) is a part, it stated the purpose of the Act as follows:

Section 1. Purpose.

The Legislature hereby declares that public office is a public trust and that any effort to realize personal financial gain through public office other than compensation provided by law is a violation of that trust. In order to strengthen the faith and confidence of the people of the State in their government, *the Legislature further declares that the people have a right to be assured that the financial interests of holders of or candidates for public office present neither a conflict nor the appearance of a conflict with the public trust.* Because public confidence in government can best be sustained by assuring the people of the impartiality and honesty of public officials, this act shall be liberally construed to promote complete disclosure.

1978 Pa.Laws 883. (emphasis added).

The stated purpose of the Legislature was to assure the public that the financial interests of public officials would not conflict with their duty to place the interests of the public before all other considerations. This is a much higher duty than the simple duty to refrain from engaging in bribery. Therefore, acquittal on a bribery charge does not determine elements necessary for prosecution pursuant to § 403(b).

Additionally, Cherpes makes a separate argument that under the principles of res judicata, the grant of a motion for judgment of acquittal on § 4701(a)(1) bars conviction on § 403(b). We disagree for many of the same reasons employed in the immediately preceding analysis.

The Pennsylvania Supreme Court has established that for purposes of res judicata, "the essential inquiry is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties had an opportunity to appear and assert their rights." *Callery v. Municipal Authority*, 432 Pa. 307, 312, 243 A.2d 385, 387 (1968) (citing *Hochman v. Mortgage Finance Corp.*, 289 Pa. 260, 137 A. 252 (1927)). *See also Notoro v. Estate of Hyer*, 239 Pa.Super. 10, 361 A.2d 766 (1976) (reiteration of essential inquiry for res judicata).

The ultimate and controlling issue in Cherpes's conviction under § 403(b) was whether or not his vote as a member of the Board of Commissioners was influenced by the insurance premium that he solicited and received. This issue was not decided by a determination that Cherpes was not guilty of the more narrow charge of a clearly defined *quid pro quo* transaction under section 4701(a)(1). Therefore, because this controlling issue was not decided, we conclude that res judicata does not apply.

### B.

█ Cherpes argues that the evidence presented at trial was insufficient to convict him of unsworn falsification under 18 Pa.C.S. § 4904(a)(1), which provides: "A person commits a misdemeanor of the second degree if, with intent to mislead a public servant in performing his official function, he: (1) makes any written false statement which he does not believe to be true."

Cherpes filed a financial disclosure statement which failed to disclose certain income from his insurance business. He claims that he was out of town when the statement was due and that his wife completed as well as signed the form.

The following testimony was elicited from a witness at trial regarding the signature on the disclosure statement:

Q. And are you familiar with Mr. Cherpes' handwriting?

A. I am.

Q. Do you recognize the signature?

A. It appears to be the signature of Mr. Cherpes.

In response to this testimony and Cherpes's claim that he did not sign the statement, we note that the "credibility of a witness is within the exclusive province of the fact finder. 'The fact finder is free to believe all, part or none of the evidence.' " *Commonwealth v. Kersten,* 333 Pa.Super. 343, 351, 482 A.2d 600, 603 (1984) (citing *Commonwealth v. Rose,* 463 Pa. 264, 268, 344 A.2d 824, 826 (1975)).

Drawing all reasonable inferences in favor of the Commonwealth, we conclude that the jury properly determined that Cherpes violated the elements of § 4904(a)(1).

### C.

■ Cherpes also claims that based on *Commonwealth v. McSorley,* 189 Pa.Super. 223, 150 A.2d 570 (1959), the Commonwealth had a duty to establish that Cherpes, as a public official, acted with a "corrupt motive." The short answer to such a proposal is this Court's interpretation of the *McSorley* case wherein we held that *McSorley* "do[es] not in effect produce any greater protection for the public official facing criminal charges than the presumption of innocence common to all defendants." *Commonwealth v. Steinberg,* 240 Pa.Super. 139, 156, 362 A.2d 379, 388 (1976).

### II

Cherpes next contends that the trial court erred in admitting the testimony of Laverne Cammarata and Charles Banks, associates of the Alexander & Alexander Insurance Agency, the agency which had previously handled Nascone's insurance business. Cammarata and Banks testified about a conversation they had had with Walter Klein, the controller-bookkeeper for Nascone. Essentially, Klein told them that regardless of what was submitted in its bid, a decision was made "to move the insurance" from Alexander & Alexander. Cherpes argues that this testimony violates the hearsay rule and his Sixth Amendment right of confrontation.

258

■■■ The trial court found that the testimony was properly admitted under the co-conspirator's exception to the hearsay rule.

This exception allows statements by a co-conspirator to be admitted against an accused if the statements are made during the conspiracy, in furtherance thereof, and where there is ... other evidence of the existence of a conspiracy. *Commonwealth v. Garcia*, 478 Pa. 406, 387 A.2d 46 (1978). The co-conspirator exception applies even where no party has been formally charged with conspiracy. *Commonwealth v. Dreibelbis*, 493 Pa. 466, 475, 426 A.2d 1111, 1115 (1981). For such testimony to be admissible, the Commonwealth must show: (1) a conspiracy existed between the declarant and the party against whom the evidence is offered; (2) the testimony sought to be admitted was made during the course of the conspiracy; and (3) there is other evidence to prove that a conspiracy existed. *Commonwealth v. Kersten*, 333 Pa.Super. 343, 350, 482 A.2d 600, 603 (1984). The trial court may admit such statements "upon only *slight* evidence of the conspiracy." *Kersten*, 333 Pa.Super. at 350, 482 A.2d at 603 (emphasis added). The Commonwealth need not prove the conspiracy beyond a reasonable doubt; rather, it must prove the conspiracy by a fair preponderance of the evidence. *Commonwealth v. Basile*, 312 Pa.Super. 206, 458 A.2d 587 (1983). Moreover, for purposes of this rule, the conspiracy may be inferentially established. *Dreibelbis, supra.*

Appellant's argument centers upon the trial court's ruling that there was no proof of a *"quid pro quo"* or understanding between himself and Nascone or Nascone's agents in accepting Nascone's business. Therefore, there was no proof of a conspiracy between appellant and Klein. Without proof of the conspiracy, appellant argues that Klein's statement was nothing more than hearsay.

At first blush, appellant's argument seems plausible. However, appellant's reasoning is flawed. While it is true that the Commonwealth failed to prove a conspiracy *beyond a reasonable doubt,* such a finding does not establish that

the Commonwealth also failed to establish the conspiracy, for purposes of admission of Klein's statement, by a *fair preponderance of the evidence.*

■ We find that the record establishes the existence of the conspiracy by a fair preponderance of the evidence: Klein, on behalf of Nascone, directly handled the insurance negotiations with Cherpes; appellant was negotiating with Nascone while Nascone's real estate zoning matters were pending before appellant; and both Cherpes and Nascone failed to disclose the existence of their business relationship. Clearly, the Commonwealth inferentially established the conspiracy for purposes of the exception to the hearsay rule, and consequently, there was no error or denial of appellant's Sixth Amendment rights in admitting this testimony.

### III

■ Appellant also challenges the trial court's denial of his request for a non-jury trial. The court denied the motion because Cherpes's "request ... [was] motivated by an obvious attempt to maneuver for a different forum."
It is beyond question that "there is no constitutional prohibition to a court's denial in appropriate circumstances, of a defendant's request to be tried by a judge sitting without a jury." *Commonwealth v. Garrison,* 242 Pa. Super. 509, 514–15, 363 [364] A.2d 388, 390 (1976) (allocatur denied). *See also Commonwealth v. Hailey,* 332 Pa.Super. 167, 480 A.2d 1240 (1984) (no absolute right to a bench trial); *Commonwealth v. Edney,* 318 Pa.Super. 362, 464 A.2d 1386 (1983) (same); *Commonwealth v. Maxwell,* 312 Pa.Super. 557, 459 A.2d 362 (1983) (court not constitutionally prohibited from denying request to waive jury trial); *Commonwealth v. Giaccio,* 311 Pa.Super. 259, 457 A.2d 875 (1983) (no absolute right to non-jury trial); *Commonwealth v. Forrest,* 305 Pa.Super. 297, 451 A.2d 540 (1982) (no constitutional reason why a court cannot refuse waiver). The decision to grant a waiver of a jury trial is one committed to the sound discretion of the

trial court. *Commonwealth v. Sorrell,* 500 Pa. 355, 456 A.2d 1326 (1982); *Commonwealth v. Maxwell, supra; Commonwealth v. Giaccio, supra; Commonwealth v. Forrest, supra; Commonwealth v. Lee,* 262 Pa.Super. 280, 396 A.2d 755 (1978).

*Commonwealth v. Kellum,* 339 Pa.Super. 513, 522, 489 A.2d 758, 763 (1985) (Cirillo, J., concurring).

We find that the trial court did not abuse its discretion in denying the request. It is clear that appellant's requests for recusal of the trial judge coupled with the subsequent request to waive the jury trial were nothing more than attempts to maneuver for a different forum. As in *Kellum,* a colloquy was not necessary to discern this. *Id.,* 339 Pa.Superior Ct. at 518, 489 A.2d at 761.

### IV

Cherpes raises four issues concerning the trial judge's refusal to recuse himself: (1) the judge erred in undertaking to review the recusal motions himself; (2) the trial court erred in denying the recusal motions without an evidentiary hearing; (3) the court abused its discretion in denying the recusal motions; and (4) the trial court erred by applying the incorrect standard for reviewing such motions. We will address each of these claims seriatim.

### A.

Appellant first argues that the trial judge erred in ruling upon the recusal motion rather than calling upon another judge to preside over the motion. In *Reilly by Reilly v. SEPTA,* 507 Pa. 204, 489 A.2d 1291 (1985), the Supreme Court of Pennsylvania restated the long-standing rule regarding this issue:

The proper practice on a plea of prejudice is to address an application by petition to the judge before whom the proceedings are being tried. He may determine the question in the first instance, and ordinarily his disposition of it will not be disturbed unless there is an abuse of discretion. Due consideration should be given by him to

the fact that the administration of justice should be beyond the appearance of unfairness. But, while the mediation of courts is based upon the principle of judicial impartiality, disinterestedness, and fairness pervading the whole system of judicature, so that courts may as near as possible be above suspicion, there is, on the other side, an important issue at stake: that is, that causes may not be unfairly prejudiced, unduly delayed, or discontent created through unfounded charges of prejudice or unfairness made against the judge in the trial of a cause. It is of great importance to the administration of justice that such should not occur. If the judge feels that he can hear and dispose of the case fairly and without prejudice, his decision will be final unless there is an abuse of discretion. This must be so for the security of the bench and the successful administration of justice. Otherwise, unfounded and ofttimes malicious charges made during the trial by bold and unscrupulous advocates might be fatal to a cause, or litigation might be unfairly and improperly held up awaiting the decision of such a question or the assignment of another judge to try the case. If lightly countenanced, such practice might be resorted to, thereby tending to discredit the judicial system. The conscience of the judge alone is brought in question; he should, as far as possible, avoid any feeling of unfairness or hostility to the litigants in a case. If the judge wishes a full exposition of the question of unfairness, he may follow the unusual practice of Judge PARKER and summon another judge to decide it, but he is not required to do so.

*Id.*, 507 Pa. at 220–21, 489 A.2d at 1299 (quoting *Crawford's Estate*, 307 Pa. 102, 108–09, 160 A. 585, 587 (1932)).

Appellant's reliance upon *Municipal Publications, Inc. v. Court of Common Pleas*, 507 Pa. 194, 489 A.2d 1286 (1985), is misplaced. *Municipal Publications* only requires the trial judge to call upon another judge to rule upon the motion when the trial judge

becomes a witness, *id.*, feels it necessary to defend or explain his conduct on a factual basis, *Commonwealth v. Darush*, 501 Pa. 15, 459 A.2d 727 (1983), is personally interested in the outcome of the cause, *In re Dunmore Borough's Election*, 299 Pa. 517, 149 A. 733 (1930), is so closely related to a party or their attorney that such personal interest can be presumed, *see* Canon of Judicial Conduct 3 C, or where the record shows that a particular ruling or rulings which materially prejudice the party seeking recusal resulted from express bias or ill will against that party, *Darush, supra.*

*Reilly*, 507 Pa. at 235, 489 A.2d at 1307 (Hutchinson, J., concurring) (footnote omitted). *See also Commonwealth v. Satzberg*, 358 Pa.Super. 39, 516 A.2d 758 (1986). Therefore, the trial judge did not err in deciding the recusal motion himself.

### B.

 Cherpes next contends that the trial court was required to hold an evidentiary hearing on the recusal motion. He bases this claim on the allegations contained in the motion concerning the judge's impartiality and appearance of impartiality. This contention is without merit. The decision of the trial judge to decide the motion is final unless there is an abuse of discretion. *Reilly.* As discussed *infra*, we find that the learned trial judge did not abuse his discretion.

### C.

 Appellant also claims that the trial judge abused his discretion in denying the recusal motions. In support of this contention, appellant sets forth numerous factual allegations that he believes show the trial judge's actual or apparent bias. However, there is no allegation that there was any type of improper communication between the judge and any other person, nor is there any allegation of any impropriety by the trial court.

Appellant, by undertaking a careful study of the trial judge's campaign records, has attempted to show some type of improper relationship between the judge and the Commonwealth. As the learned trial judge notes in his opinion, these allegations "are the same sort of contacts that could be found to exist between any elected or appointed judge in the Commonwealth."

By any stretch of the imagination, the trial court did not abuse its discretion.

### D.

Finally, appellant argues that the trial court erred in applying an actual bias standard in reviewing the recusal motion. In *Commonwealth v. Darush*, 501 Pa. 15, 21, 459 A.2d 727, 731 (1983), the Pennsylvania Supreme Court held that "[t]he party who asserts that a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal." We find that appellant has not met this burden.

### V

Appellant Cherpes claims that the trial court erred by sentencing him to serve a two to four year term of incarceration for violation of § 403 of the State Ethics Act and a concurrent six to twelve-month term of incarceration for violation of 18 Pa.C.S. § 4904, relating to unsworn falsification. He was also ordered to pay a fine of $197,061 to the state treasury, pursuant to 65 P.S. § 409(c).

Cherpes contends that the trial court erred in imposing this sentence by (1) failing to state adequate reasons for its sentence; (2) failing to sentence within the Sentencing Guidelines; (3) failing to provide a contemporaneous written statement of the reasons for the alleged deviation from the Guidelines; (4) failing to adequately explain why a lesser sentence would depreciate the seriousness of the crime; and (5) imposing an allegedly unfair sentence.

■ (1) It remains well-settled in Pennsylvania that the trial court must state on the record the reasons for the sentence imposed. *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977); Pa.R.Crim.P. 1405(b). We have recently ruled that the stated reasons for the sentence imposed "should reflect the judge's consideration of the criteria enumerated in the Sentencing Code, as well as the circumstances of the offense and the character of the offender. However, the judge is not required to list the criteria of the Sentencing Code and detail his ... response to each." *Commonwealth v. Perry*, 342 Pa.Super. 355, 357, 492 A.2d 1158, 1159 (1985) (citing *Commonwealth v. Aldinger*, 292 Pa.Super. 149, 436 A.2d 1196 (1981)).

Our review of the record indicates that the trial judge did consider the criteria enumerated in the Sentencing Code. The trial judge also noted that the Sentencing Guidelines allow for more severe sentences than are otherwise applicable when, as here, a defendant abused his position of public office. *See* 204 Pa.Code § 303.1(e). In addition, the trial judge considered the circumstances surrounding Cherpes's violation of the State Ethics Act as well as Cherpes's prior reputation as an upstanding member of the community and a devoted family man with no previous criminal record. Therefore, according to the rule in *Perry*, the trial court gave adequate reasons for the sentence that it imposed.

(2) Even if we were to agree that Cherpes could have been sentenced within the standard minimum range of the Guidelines, we must also recognize that the Guidelines permit the sentencing court to impose a more severe sentence for abuses of public office such as those involved here. *See* 204 Pa.Code § 303.1(e). Therefore, we cannot conclude that the sentence imposed was outside the Guidelines.

(3) Our decision that there was no deviation from the Guidelines precludes the need to address the claim that there was an inadequate explanation for such alleged deviation.

■ (4), (5) The gist of the remaining sub-issues is that the sentence imposed was excessive. We have determined

above that the sentence imposed did not exceed statutory limitations. This court has established that "unless the sentence exceeds the statutory maximum or is so excessive as to constitute a manifest abuse of discretion, the trial court's determination will not be disturbed." *Commonwealth v. Scarborough*, 313 Pa.Super. 521, 533, 460 A.2d 310, 316 (1983) (citing *Commonwealth v. Plank*, 498 Pa. 144, 145, 445 A.2d 491, 492 (1982)). This court has also stated that "[i]f the sentence is within statutory limits there is no abuse of discretion unless the sentence is so manifestly excessive as to inflict too severe a punishment." *Commonwealth v. Russel*, 313 Pa.Super. 534, 545, 460 A.2d 316, 322 (1983) (Cirillo, J., now P.J.). A sentence is not manifestly excessive if a court, after reviewing the circumstances of the crime and the background of the appellant, considers the gravity of the offense, appellant's rehabilitative needs, and the need to protect the public. *Commonwealth v. Martin*, 328 Pa.Super. 498, 504, 477 A.2d 555, 558 (1984).

 As we have discussed earlier, the trial judge reviewed the circumstances of appellant's violation of the State Ethics Act, he reviewed appellant's fine background, the gravity of the offense, appellant's rehabilitative needs and the need to protect the public. Although the trial court did not think that incarceration would serve appellant's rehabilitative needs or the need to protect the public, he properly relied on 42 Pa.C.S. § 9725(3) in concluding that a lesser sentence would depreciate the seriousness of the crime. Therefore, we cannot conclude that the sentence imposed was excessive or unfair.

## VI

 Cherpes argues that 65 P.S. § 409(c), which requires a penalty equal to three times the amount gained through violation of the State Ethics Act, must be construed in light of 42 Pa.C.S. § 9726(c)-(d) which require a sentencing court to limit the fine imposed in proportion to a defendant's ability to pay. In *Commonwealth v. Bidner*, 286 Pa.Super. 100, 422 A.2d 847 (1980), we ruled that specific penalty provisions prevail over more general penalty provisions.

Such is the situation here. The penalty provision in § 409(c) is specific, and based on the rule in *Bidner,* must prevail over the more general provision in § 9726(c).[1] *See* 1 P.S. § 1933 (if conflict between special and general provisions exists, special provision shall prevail).

In upholding the fine imposed, we distinguish inapposite case law such as *Commonwealth v. Gaskin,* 325 Pa.Super. 349, 472 A.2d 1154 (1984), which does not refer to a statute such as the one involved here that requires the application of a specific formula for imposing a fine. *Gaskin* applies the theory of § 9726, which only refers to general provisions not superseded by a more specific statute. If the legislature had intended to impose treble damages through § 409(c) only according to the means of a defendant, we are confident that such language would have been included in the statute.

## VII

Cherpes argues that 65 P.S. § 409(c) is a violation of due process and an unconstitutional encroachment on judicial power granted in Article V, Section 1 of the Pennsylvania Constitution.[2]

█ Cherpes's due process claim is based on the assertion that such mandatory penalties deprive the trial judge of an opportunity to exercise his discretion. The Pennsylvania Supreme Court recently refuted such an argument in upholding far more drastic Pennsylvania statutes requiring mandatory sentences for certain offenses. *Commonwealth*

1. Pa.R.Crim.P. 1407(c) does not mandate a different result. Like § 9726, Rule 1407(c) also is a general provision which requires the court to tailor the fine imposed to the defendant's ability to pay. The rule in *Bidner, supra,* applies to make the specific provision of § 409(c) prevail over rule 1407(c). Nor is Cherpes without remedy if he is unable to pay. Rule 1407(b) allows for payment through installments. *See Commonwealth v. Scatena,* 332 Pa.Super. 415, 442 n. 17, 481 A.2d 855, 869 n. 17 (1984). *Cf.* Rule 1407(a) (defendant shall not be imprisoned if he is financially unable to pay a fine).

2. Although Cherpes lists an equal protection violation in his statement of questions, he has waived this claim for failure to set out his position in the argument portion of his brief. *See* Pa.R.A.P. 2119, 2101.

*v. Wright,* 508 Pa. 25, 494 A.2d 354 (1985), *aff'd sub nom. McMillan, et al. v. Pennsylvania,* —— U.S. ——, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986).

The *Wright* case decided the constitutionality of Pennsylvania's mandatory minimum sentencing statute which required a minimum sentence of five years total confinement for persons found to be in visible possession of a firearm during the commission of certain felonies. In approving the statute in *Wright,* the court ruled that its effect "is merely to limit the discretion of the sentencing court in the selection of a minimum sentence...." 508 Pa. at 40, 494 A.2d at 362. The court continued by noting that a defendant has no cognizable right to leniency, and "no right to a particular punishment within the pertinent statutory range." *Id. See Commonwealth v. Bell,* 512 Pa. 334, 516 A.2d 1172 (1986). The *Wright* decision is based on the reasoning that once a defendant has been convicted of a crime, due process and judicial discretion are not offended by a legislatively mandated minimum sentence. The same reasoning applies to a statute requiring a minimum fine. Therefore, Cherpes's due process argument must fail.

█ Regarding Cherpes's claim that § 409(c) usurps the power conferred on the judiciary by Article V, Section 1 of the Pennsylvania Constitution,[3] the Pennsylvania Supreme Court also ruled in *Wright, supra,* that "[i]t is the province of the legislature to determine the punishment imposable for criminal conduct." *Wright,* 508 Pa. at 40, 494 A.2d at 361. Applying the rule in *Wright* to the mandatory fine in § 409(c), we must conclude that Cherpes's argument on this point must fail, for it remains within the province of the legislature to determine the applicable fines for violation of the State Ethics Act.

3. Article V, § 1 provides:
 The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the Supreme Court, the Superior Court, the Commonwealth Court, courts of common pleas, community courts, municipal and traffic courts in the City of Philadelphia, such other courts as may be provided by law and justices of the peace. All courts and justices of the peace and their jurisdiction shall be in this unified judicial system.

## VIII

█ Cherpes argues that defense counsel should have been given an opportunity to rebut the Commonwealth's closing argument. Pa.R.Crim.P. 1116(b) allows each party to make a closing argument, with the Commonwealth arguing last. Cherpes claims that this Rule violates due process and his right to counsel by denying him the right to rebut the Commonwealth's argument. We disagree.

It is axiomatic that "an act of the legislature enjoys a presumption of constitutional validity which is not overcome unless the law 'clearly, palpably and plainly' violates the constitution." *Commonwealth v. Heck,* 341 Pa.Super. 183, 202–03, 491 A.2d 212, 222 (1985) (Cirillo, J., now P.J.) (citing *Commonwealth v. Robinson,* 497 Pa. 49, 438 A.2d 964 (1981)). This presumption of validity also applies to the Rules of Criminal Procedure. Cherpes has not been denied an opportunity to present a closing argument. He simply was not permitted to rebut the Commonwealth's closing argument. The procedure followed by the trial court is a time-honored practice of our criminal justice system which certainly does not deny Cherpes's right to a fair trial. We cannot conclude that denying Cherpes a rebuttal "clearly, palpably and plainly" violates the constitution.

Cherpes also argues that Rule 1116 is unconstitutional because it deprives him of his right to representation by denying him a right to summation. The short answer to this argument is that Cherpes did present a summation, though not a rebuttal. Therefore, the argument falls of its own weight.

## IX

Cherpes argues that his conviction and sentence violate 65 P.S. § 407(9) as well as due process of law.

█ The law is clear that "only those issues included in post-verdict motions will be considered for appellate review." *Commonwealth v. Gravely,* 486 Pa. 194, 198–99, 404 A.2d 1296, 1298 (1979); *Commonwealth v. Shain,* 324 Pa.Super. 456, 471 A.2d 1246 (1984); Pa.R.A.P. 302(a). Al-

though our review of the record indicates that Cherpes has not preserved this remaining issue for appeal, we recognize that the issue of a sentence's legality cannot be waived. *Commonwealth v. Norris*, 498 Pa. 308, 319 n. 9, 446 A.2d 246, 251 n. 9 (1982); *Commonwealth v. Cooke*, 342 Pa.Super. 58, 68 n. 1, 492 A.2d 63, 69 n. 1 (1985).

■ Contrary to appellant's assertion, the Ethics Act places no affirmative duty on the Ethics Commission to precede a criminal prosecution by affording the alleged offender a chance to remove himself from the conflict. The plain language of § 407(9)(ii) and (iii) provide no support for appellant's assertion. Section 407(9)(ii) and (iii) provide that the Ethics Commission shall:

(ii) *Provide written advice to any person upon their request with respect to such person's duties under this act.* Such advice shall be provided within 21 working days of the request, provided that the time may be extended for good cause. It shall be a complete defense in any enforcement proceeding initiated by the commission, and evidence of good faith conduct in any other civil or criminal proceeding, if the requester, at least 21 working days prior to the alleged violation, requested written advice from the commission in good faith, disclosed truthfully all the material facts and committed the acts complained of either in reliance on the advice or because of the failure of the commission to provide advice within 21 days of the request of such later extended time.

(iii) *Initiate an inquiry where an opinion has not been requested but where there is a reasonable belief that a conflict may exist.* Such inquiry shall be conducted in privacy with full respect to the confidentiality of all the parties involved in the alleged conflict. *If the commission finds that there is a conflict, the information shall be provided for criminal proceedings unless the alleged offender removes himself from the conflict with[out] receiving financial gain.*

(Emphasis added).

Section 407(9)(ii) does not apply to this case because there is no indication in the record that Cherpes requested advice

from the Commission. Section 407(9)(iii) does not impose a duty on the Commission to allow the alleged offender an opportunity to remove himself from conflict before the Commission initiates criminal proceedings. The statute merely recognizes the common sense conclusion that criminal proceedings would not be initiated if the alleged offender removed himself from the conflict before violating the act—that is, before receiving financial gain.

Cherpes's reference to *McCutcheon v. Commonwealth, State Ethics Commission,* 77 Pa.Cmwlth. 529, 466 A.2d 283 (1983), does not require a different result. *McCutcheon* merely reaffirmed the discretionary authority of the Ethics Commission to recommend criminal prosecution or dismissal of charges. The case does not provide a basis for the affirmative duty that Cherpes seeks to impose on the Commission.

Cherpes claims that his conviction and sentence are illegal because the Commission breached its duty to Cherpes by not allowing him to remove himself from the conflict before initiating criminal proceedings. Our foregoing analysis reveals that no such duty exists. Therefore, Cherpes's claim of a due process violation, which is also based on the alleged violation of a nonexistent duty, must also fail.

AFFIRMED.