## Beiger v. Warren

*Robert J. Sugarman,* for plaintiff.
*John P. Koopman,* for Andrew Warren and Mark Schweiker.
*Peter Glascott,* for defendant County of Bucks.

GARB, *P.J.,* February 9, 1989 — This is a class action brought on behalf of all the taxpayers of Bucks County. Defendants are Andrew Warren and Mark Schweiker, two of the three members of the

Bucks County Board of Commissioners who were elected in the general election of November 1987 and who assumed office in January 1988. This suit essentially seeks to stop the construction of the Point Pleasant water project through a variety of means as set forth in the five counts of the complaint. Defendants have filed preliminary objections which are before us for disposition.

As the basis for the relief sought the complaint sets forth a litany of allegations regarding the actions of defendants and others regarding the history of this project to some extent in both its political and judicial contexts. In some respects the issues raised were raised previously during the extended litigation surrounding this matter and those issues were adjudicated in that prior litigation. For that purpose we will incorporate by reference all of the prior litigation surrounding this project, specifically *Sullivan v. County of Bucks and Neshaminy Water Resources Authority*. 43 Bucks L.Rep. 183 (1983), 44 Bucks L.Rep. 242 (1984), affirmed 92 Pa. Commw. 213, 499 A.2d 679, allocatur denied 532 A.2d 21 (1986), 44 Bucks L.Rep. 267 (1984), 46 Bucks L.Rep. 98 (1985), affirmed 92 Pa. Commw. 213, 499 A.2d 679, allocatur denied 532 A.2d 21 (1986), 46 Bucks L.Rep. 270 (1985), 46 Bucks L.Rep. 354 (1985). We likewise take judicial notice of and incorporate by reference the many orders entered by this court with respect to this project.

We will address the five counts of the complaint seriatim. Paragraphs 1 through 22 inclusive of the complaint contain plaintiff's assertions regarding the alleged improper and unlawful actions of defendants. Among those is a decision made by the Board of County Commissioners with the affirmative votes of defendants to borrow approximately 14 million dollars for the purpose of completion of the project.

Count 1 asserts that this action represents an abuse of power, waste, mismanagement, misfeasance in office and otherwise constitutes illegal conduct beyond the authority of the county commissioners. Therefore, plaintiffs request that the court find and determine that the action of defendants is illegal, inappropriate, constitutes malfeasance and waste and inappropriate management of financial resources, and declare that the commissioners may not borrow the money to complete the project in the circumstances, to void such agreement to borrow the money, "and issue a mandamus directed at the commissioners or otherwise order them not to proceed with such borrowing, and award such other relief as may be just and proper, including surcharging defendants and attorney's fees."

We believe we lack jurisdiction over the subject matter. Section 351 of the Local Government Unit Debt Act, the Act of April 28, 1978, P.L. 124, 53 P.S. §6780-351 provides that the governing body of each local government unit shall, before any bonds or notes are actually delivered to the additional purchasers, or before becoming bound on any lease, guaranty, subsidy contract or other agreement, evidencing lease rental debt cause to be certified to the department (Pennsylvania Department of Community Affairs) under the signature of the clerk or secretary of the governing body and its corporate seal, a complete and accurate copy of the proceedings had for the incurring of debt. There then follows a series of provisions for the review and approval or disapproval by the Department of Community Affairs of the projected incurring of indebtedness.

Section 401 of the act provides that where proceedings for the incurring of debt have been taken by a local government unit, any taxpayer or the local government unit, or other interested party, may file

with the department a petition for a declaratory order asserting the validity or a complaint asserting the invalidity of such proceedings or any part thereof. It is further provided in this section that if a petition for a declaratory order or complaint shall be filed prior to approval, disapproval or deemed approval, the department shall not be deemed to have approved the proceedings during the pendency of the matter before the department. Subsection (b) provides in relevant part as follows:

"*Exclusive jurisdiction* is hereby conferred on the department to hear and determine all procedural and substantive matters arising from the proceedings of a local government unit taken pursuant to this act, including, without limitation, the regularity of the proceedings, the validity of the bonds, notes, tax anticipation notes or other obligations of the local government unit, *and the legality of the purpose for which such obligations are to be issued.*" (emphasis supplied)

That same subsection further provides as follows:

"A determination by the department under this act shall, except as provided in this subsection, *be conclusive and binding as to all procedural and substantive matter which were or could have been presented to the department hereunder.*" (emphasis supplied)

Section 402 provides that in all cases in which proccedings of a local government unit shall have been approved, disapproved or deemed approved and in all cases in which the department shall have determined the issues presented upon petition for a declaratory order or complaint, the local government unit, any taxpayer of the local government unit or any other interested party aggrieved by the determination of the department may petition the Commonwealth Court for review of the determina-

tion of the department asserting the validity or invalidity of the local government unit proceedings. That section further provides as follows:

"The Commonwealth Court shall have *exclusive appellate jurisdiction* to review all determinations of the department . . . to affirm, modify or reverse any actions taken by the department, or to remand the matter for further proceedings. The time within which such petitions for review shall be filed with the Commonwealth Court and all other appellate procedure before the Commonwealth Court shall be governed by the Pennsylvania Rules of Appellate Procedure." (emphasis supplied)

Finally, section 359 provides that where a certificate of approval has been issued by the department and no petition for a declaratory order or complaint has been filed, or when after a petition for a declaratory order or complaint has been filed, the proceedings have been approved finally by the department and no appeal to court has been taken, or an appeal to court has been taken, and the proceedings have been approved finally by the court where the appeal has been dismissed:

"[t]he validity of the proceedings, the right of the local government unit lawfully to issue its bonds or notes or to enter into a lease, guaranty, subsidy contract or other agreement evidencing lease rental debt pursuant to such proceedings, and the validity and due enforceability of the bonds, notes or other instruments in accordance with their terms *shall not thereafter be inquired into judicially, in equity, at law, or by civil or criminal proceedings, or otherwise, either directly or collaterally.*" (emphasis supplied)

As can be seen, the Act of Assembly in the clearest of terms reposes exclusive jurisdiction regarding the viability of undertaken indebtedness by a unit of

local government in the Department of Community Affairs. Administrative procedures are provided for and appellate review insured. Once this has been exhausted the Legislature provides unequivocally that collateral attack of any kind may not be made in any other court. Thus adequate administrative and judicial review is furnished and due process is satisfied. In this case, in fact, one of the named parties plaintiff in this lawsuit filed a complaint before the Department of Community Affairs challenging this asserted indebtedness. Administrative proceedings were held and by order the Department of Community Affairs dismissed the complaint. Although the period for appeal to the Commonwealth Court has passed, no appeal was taken. Therefore, we believe that we lack jurisdiction over this matter.

Secondly, we believe that judicial intrusion into this legislative and executive decision of the Board of County Commissioners outside of the administrative procedure created by the foregoing act, would constitute a violation of the constitutional separation of powers. It's presumed that municipal officers act properly for the public good. *Robinson v. Philadelphia,* 400 Pa. 80, 161 A.2d 1 (1960) and *Hyam v. Upper Montgomery Joint Authority,* 399 Pa. 446, 160 A.2d 539 (1960). Courts will not sit in review of municipal actions involving discretion, in the absence of proof of fraud, collusion, bad faith or arbitrary action equating an abuse of discretion. *Blumenschein v. Pittsburgh Housing Authority,* 379 Pa. 566, 109 A.2d 331 (1954). In the absence of proof of fraud, collusion, bad faith or abuse of power, courts do not inquire into the wisdom of municipal actions and judicial discretion should not be substituted for administrative discretion. *Goodman Appeal,* 425 Pa. 23, 227 A.2d 816 (1967), *Parker v. Philadelphia,* 391 Pa. 242, 137 A.2d 343 (1958) and

*Weber v. Philadelphia,* 437 Pa. 179, 262 A.2d 297 (1970).

The court does not have the power to strike down a statute or action of a legislative body except for constitutional reasons, even where it believes the statute unwise or productive of socially undesirable results. *Estate of Armstrong v. Philadelphia Board of Probation,* 46 Pa. Commw. 33, 405 A.2d 1099 (1979). The judiciary should not intrude into the legislative area of government unless it is demonstrated that the legislative body has acted in a manner violative of the constitution or acts of the General Assembly or the organic law of the municipality or in a manner wherein the legislative body lacks the power or authority to act. The wisdom of the legislative act is not within the court's judgment. *Mastrangelo v. Buckley,* 433 Pa. 352, 250 A.2d 447 (1969). The court of equity will not substitute its determination of what may be wise for the decision of the appropriate governmental body, absent a showing of bad faith or abuse of power. *Parker v. Philadelphia, supra.*

Our role in scrutinizing legislation is limited. We may not at the invitation of a disgruntled taxpayer reassess the wisdom and expediency of alternative methods of solving public problems. It is the province of the Legislature, not the judiciary, to determine the means necessary to confront and solve public problems. *Tosto v. Pennsylvania Nursing Home Loan Agency,* 460 Pa. 1, 331 A.2d 198 (1975) and *Leahey v. Farrell,* 362 Pa. 52, 66 A.2d 577 (1949).

Count 2 seeks the recusal of the undersigned as well as "the other judges of this court who sat on the Board of Judges." We will assume that plaintiffs seek the recusal of the Honorable Kenneth G. Biehn and Edward G. Biester who were members of the

Board of Elections with the undersigned in 1983 when the County Commissioners were running for election. We do not believe that a motion for recusal is appropriate in a complaint seeking relief from parties other than the judge in the case. Secondly, we find no basis in the complaint to warrant recusal, see *Reilly by Reilly v. SEPTA*, 507 Pa. Commw. 204, 489 A.2d 1291 (1985), *Commonwealth v. Salzberg*, 358 Pa. Super. 39, 516 A.2d 758 (1986) and *Commonwealth v. Cherpes*, 360 Pa. Super. 246, 520 A.2d 439 (1987). Thirdly, the issue of recusal of the undersigned has been raised in the litigation of *Sullivan v. County of Bucks, supra,* and was addressed and decided previously.

We fail totally to understand what plaintiffs seek in count 3. After incorporating all previous paragraphs of the complaint by reference it is asserted that defendant's actions are in violation of section 411 of the County Code and are subjected to the liabilities on their bonds pursuant to sections 421 and 422 of the County Code. Section 411 of the County Code, the Act of August 9, 1955, P.L. 323, 16 P.S. §411 provides that if any county officer neglects or refuses to perform any duty imposed upon him by the provisions of the act or by the provisions of any other Act of Assembly, or by the rules of court or other provision of law, he shall be guilty of a misdemeanor and sentenced to pay a fine not exceeding $500. We completely fail to understand in what respect this act of assembly has any relevancy to this action in equity. In any event, it is clear and the complaint so states that defendants are proceeding with the project as a result of various orders of this and other courts.

Sections 421 and 422 present an even greater mystery to us because those sections provide only for the provisions of the bond to be filed on behalf of

the county commissioners and the stated obligations of those bonds. There is nothing before us regarding any suit against the bonding companies.

Lastly, this count makes reference to violations of the Environmental Act of 1972. It says no more than that. We have no way of knowing to what plaintiffs are referring. In any event, we may take judicial notice of a multitude of actions before the Department of Environmental Resources of Pennsylvania and hearings before the Environmental Hearing Board. We likewise make reference to and take judicial notice of a variety of rulings and orders of those bodies established by legislation to enforce the Environmental Act.

Count 4 asserts that the defendants are acting in violation of Article I, section 27 of the Pennsylvania Constitution by proceeding with this project. That section provides as follows:

"The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and aesthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the commonwealth shall conserve and maintain them for the benefit of all the people."

In reliance upon this constitutional provision plaintiffs seek an order declaring that the commissioners are violating this provision in proceeding with the project and requesting that their decision to do so be set aside and order that they terminate their activities in that regard pending final decisions on environmental matters.

As has been noted so many times in the litigation surrounding this project, the Pennsylvania Legislature acting independently and in conjunction with

other states and the federal government has created administrative agencies and an extensive body of law for the purpose of insuring the protection of the environment. The Department of Environmental Resources was created for that purpose. Pennsylvania joined with the states of New York, New Jersey and Delaware and the United States in creating the Delaware River Basin Commission. Volumes of legislation and regulations have been propounded. A very detailed and sophisticated system of administrative and judicial review has been created. Anyone with any familiarity with the subject matter of this litigation knows that the parties involved herein have been involved exhaustively in that entire environmental process regarding the grant and review of the many permits necessary before this project may become a reality. Much of that process is still in progress. The issue of refraining from proceeding with this project until that whole process has been exhausted in several of the prior decisions of this court and other courts and it has been determined that it is not realistic to do so. We see no reason at this late date and in the context of this particular lawsuit to deviate in that regard.

Finally, in count 5 plaintiffs allege that defendants have misbehaved in office and should be "convicted" and removed from office by quo warranto. Quo warranto does not lie in this situation. That is the sole and exclusive remedy to try *title* or *right* to office. It is part of the general rule that quo warranto can be brought only by an attorney general, or a district attorney, or by a person who has a special right or interest as distinguished from the right or interest of the public generally, or has been specially damaged. And this is particularly true where such a judgment would not place the plaintiff himself in office. *Mayer v. Hemphill*, 411

Pa. 1, 190 A.2d 444 (1963). Obviously, this case was not brought on the relation of the attorney general or the district attorney nor does it challenge the title or right to office of defendants. It merely alleges that they should be removed from office for some alleged misfeasance or malfeasance. Futhermore, plaintiffs in this case do not claim right or title to the office.

For the foregoing reasons we will sustain the preliminary objections and dismiss the complaint with prejudice.

## ORDER

And now, February 9, 1989, it is hereby ordered, directed and decreed that the preliminary objections to the complaint are sustained and the complaint is dismissed with prejudice.